WALL et al. v. ECCLES.

No. 3867. Decided December 30, 1922. (211 Pac. 702.)

1. SALES—FACTS HELD TO SHOW SALE BY PLAINTIFFS' INTESTATE AND NOT BY CORPORATION. In an action by an administratrix, proof that the intestate had formed a corporation, of which he owned all the stock, to manufacture patented articles for him and to ship the articles to buyers upon his order, shows a sale of those articles was by the intestate and not by the corporation, even though they were invoiced and shipped by the corporation.

2. GUARANTY—"ABSOLUTE GUARANTY" AND "CONDITIONAL GUARANTY" DEFINED. An absolute guaranty is one by which the guarantor unconditionally promises payment or performance of the principal contract on default of the principal debtor or obligor, while a conditional guaranty is one which is not enforceable immediately upon the default of the principal, but under which some contingency must happen or the guarantee must take some steps to fix the liability of the guarantor.

3. GUARANTY—NOTICE OF ACCEPTANCE OF ABSOLUTE GUARANTY IS UNNECESSARY. If a guaranty of performance of a contract is absolute, notice to the guarantor of the acceptance of the guaranty is unnecessary.

4. GUARANTY—REMEDY AGAINST DEBTOR NEED NOT BE EXHAUSTED IF GUARANTY IS ABSOLUTE. If the guaranty is absolute, it is not necessary to exhaust the remedies against the principal debtor before proceeding against the guarantor.

5. GUARANTY—LETTER HELD TO ESTABLISH ABSOLUTE GUARANTY. A letter stating a buyer of mine supplies had informed the writer of the purchase of the supplies, and closing with the statement that "this will be your authority to ship the supplies" and that the writer "will personally guarantee the bill," manifests an absolute and not a conditional guaranty.

6. GUARANTY—SELLER'S DEMAND OF GUARANTY FROM BUYER IS EQUIVALENT TO REQUEST. The demand of the seller that the buyer furnish a guaranty of payment of the purchase price before the goods would be shipped is equivalent to a request by

the seller that the guarantor guarantee the price if such request were necessary.

7. GUARANTY—REQUEST NEED NOT PROCEED FROM GUARANTEE. It is not necessary that the request for a guaranty proceed directly from the guarantee.

8. GUARANTY—USE OF FUTURE TENSE HELD NOT TO MAKE GUARANTY MERE OFFER. The use of the future tense, in a letter stating the writer "will guarantee" the bill, does not show that the letter was a mere offer of guaranty which required acceptance to become binding.

Appeal from the District Court, Third District, Salt Lake County; *M. L. Ritchie,* Judge.

Action by Mary Frances Wall, as administratrix, and others, against L. R. Eccles. Judgment for plaintiffs, and defendant appeals.

AFFIRMED.

*De Vine, Howell, Stine & Gwilliam,* of Ogden, for appellant.

*Ray & Rawlins,* of Salt Lake City, for respondents.

THURMAN, J.

Plaintiff brought this action against the defendant on two counts for the purchase price of certain mining equipment and supplies amounting to the sum of $8,650. The first count alleged a sale and delivery of the supplies by plaintiffs' intestate to the defendant, while the second count alleged the same transaction to be a sale to one J. E. Higgins, with payments guaranteed by defendant.

The trial court, sitting without a jury, found for the defendant on the first count and for the plaintiffs on the second. Judgment accordingly was entered, from which judgment defendant appeals.

There is no substantial dispute concerning the facts. The

Appeal from Third District

evidence tends to show that, at the time the supplies were sold and delivered, J. E. Higgins was operating a certain mine at Bingham, Utah, under the name of the "Fortuna Mining Company" and on June 14, 1917, wrote to plaintiffs' intestate as follows:

"Col. E. A. Wall, Salt Lake.—Dear Sir: This will confirm verbal order for rolls, crusher and tables ordered this day by me for the Fortuna Mining Co. I gave L. R. Eccles of the Amalgamated Sugar Company of Ogden as reference. He is out of town, will be back tomorrow, when he will guarantee this account.

"Yours very truly,

"Fortuna M. Co.,

"By James E. Higgins."

The letter was received by Col. Wall on or about the same date.: The evidence tends to show that Col. Wall refused to ship the supplies unless payment therefor was guaranteed. Higgins thereupon requested defendant to guarantee his credit and to, write Col. Wall to that effect. In response to said request, defendant wrote the following letter:

"Colonel E. A. Wall, Salt Lake City, Utah.—Dear Colonel Wall: I received word from Mr. J. E. Higgins that he has purchased from you for immediate delivery, on ninety days' credit:

| | |
|---|---|
| 1 Corrugated Crusher Rolls | $2,000 00 |
| 1 Vertical Rolls | 2,000 00 |
| 1 Jaw Crusher | 2,250 00 |
| 8 Wall Tables | 2,400 00 |
| | $8,650 00 |

"And this letter will be your authority to ship this material in accordance with Mr. Higgins' request.

"For your information will state that I will personally guarantee this bill.

"Very truly yours, L. R. Eccles."

Thereafter the supplies were shipped as ordered, and defendant had knowledge of the shipment. The supplies were not paid for, either by Higgins or the defendant.

Some contention is made by appellant that the supplies were not sold by Col. Wall but by the "Salt Lake Engineering Works, a corporation." The contention is too technical for serious consideration. The Salt Lake Engineering

Works appears to have been a corporation of which Col. Wall was president and owner of the stock. The corporation manufactured the supplies in question under patents in the name of Wall as patentee. They were manufactured for him and charged to his personal account. That he used the corporation as his agent to manufacture the supplies and ship them upon his order appears to be beyond all controversy, as we read the record. The fact that the supplies have been invoiced and shipped by the Salt Lake Engineering Works, under the circumstances above stated does not even tend to prove that they were not sold and delivered by Col. Wall as charged in the complaint.

The controlling question in the case, and the only one that is material, to be considered is: Was the guaranty made by defendant an absolute guaranty in contemplation of law, or was it merely conditional? If the former, the judgment should be affirmed; if the latter, it should be reversed.

Before attempting an analysis of the facts with the view of determining the nature of the guaranty in the case at bar, a brief reference to the legal distinction between the two classes of guaranty above referred to will tend to elucidate the grounds upon which our decision must rest:

"An absolute guaranty is one by which the guarantor unconditionally promises payment or performance of the principal contract on default of the principal debtor or obligor, the most usual form of an absolute guaranty being that of payment, such as the payment of commercial paper; but an absolute guaranty of performance is placed on the same ground, and subject to the same rules, as a guaranty of payment. A guaranty is deemed to be absolute unless its terms import some condition precedent to the liability of the guarantor. In order to bind the guarantor under an absolute guaranty, it is not necessary that there should be notice of acceptance of the guaranty, or notice of the default of the principal, or that any steps should be taken to enforce the contract guaranteed against the principal, and the fact that these acts are not necessary in order to bind the guarantor distinguishes an absolute guaranty from a conditional guaranty, in which case the acts are a prerequisite to holding the conditional guarantor liable." 28 C. J. pp. 895, 896.

A conditional guaranty, as defined by the same author at page 896, same volume, is as follows:

"Where the guaranty is not enforceable immediately upon the default of the principal debtor, but some contingency must happen, or the guarantee must take some steps, to fix the liability under the guaranty, the guaranty is a conditional one; and in general, in order to fix the liability of the guarantor there should be notice of acceptance of the guaranty, notice of the default of the principal, and steps should be taken to enforce the contract guaranteed against the principal."

In 20 Cyc. at page 1398, the following is given as defining an absolute guaranty:

"An absolute guaranty is one by which the guarantor is bound immediately upon the principal failing to perform his contract, without further steps taken by any one or without further conditions to be performed."

On the same page, in the next succeeding paragraph, the author also defines a conditional guaranty:

"Where the guaranty is not enforceable immediately upon the default of the principal debtor but the guarantee is obliged to take some steps to fix liability upon the guaranty, such as diligently prosecuting the claim against the principal debtor, the guaranty is a conditional one."

In 12 R. C. L. at page 1064, the author in a single paragraph defines both classes of guaranty. The definitions are substantially in accord with those given in Cyc. and Corpus Juris.

As we read the briefs of counsel there is no material difference of opinion between them as to what the law is concerning this question. The dispute is as to its applicability to the facts of the instant case.

Appellant urges the point that there was no notice of acceptance by Col. Wall of the guaranty in question and that therefore there was no enforceable guaranty. Under the authorities above cited, whether or not notice of acceptance by the guarantee is essential depends on whether the guaranty is absolute or conditional. If absolute,    3 notice is not essential. See, also 28 C. J. 904, wherein it is said:

"It is generally held that the rule requiring notice by the

guarantee of his acceptance of the guaranty applies only where the guaranty is in legal effect an offer or proposal, and where the transaction is not merely an offer of guaranty but amounts to a direct or unconditional promise of guaranty, unless notice of acceptance is made a condition of the guaranty, all that is necessary to make the promise binding is that the promisee should act upon it; and notice of acceptance is not necessary."

The text is abundantly supported by federal and state court decisions cited in the note. Many illustrations are given on page 905. See, also, to the same effect, 20 Cyc. 1407, 1408, 1409; 12 R. C. L. 1069. We do not understand that the doctrine announced by these authorities is controverted by appellant. His contention is that the guaranty in this case was conditional. That question will be determined when we come to an analysis of the facts.

It is also contended by appellant that the burden was on the plaintiff to prove that he had exhausted his remedy against the debtor, or that the debtor was insolvent, or that the guarantor had waived legal proceedings against the debtor. In support of this contention appellant relies on the following cases: *Allen* v. *Rundle*, 50 Conn. 9, 47 Am. Rep. 599; *Schermerhorn* v. *Conner*, 41 Mich. 374, 1 N. W. 955; *Bosman* v. *Akeley*, 39 Mich. 710, 33 Am. Rep. 447; *Summers* v. *Barrett*, 65 Iowa, 292, 21 N. W. 646. The solution of this question also depends on whether the guaranty was absolute or conditional. See authorities first above cited.

It is not necessary to burden this opinion with a citation of the numerous cases relied on by appellant in support of the questions presented on this appeal, for after all the controlling question is as to the nature of the guaranty. This, of course, presents a mixed question of law and fact. As to what constitutes an absolute guaranty we have quoted excerpts from several standard authorities. While these are not as satisfactory, perhaps, as would be the specific cases referred to, yet where, as in the instant case, the court, after careful investigation, is satisfied that the language of the text-writer reflects the weight of judicial opinion, it would seem entirely unnecessary to refer to the cases upon which the text-writer relies.

The record does not disclose that Col. Wall, or plaintiffs, ever made demand on Higgins for payment, but it does appear that demand for payment was made on defendant December 7, 1917.

The nature of the guaranty in question must be tested by the rules of law to which we have referred. Without repeating haec verba the correspondence upon which respondents rely it is sufficient to say that on June 14, 1917, Higgins wrote to Col. Wall confirming a previous verbal order and informed him that the defendant, who was out of town, would return next day and guarantee the account. Two days thereafter, to wit, on the 16th day of the same month, defendant wrote Col. Wall referring to the fact that Higgins had informed him of the purchase of the supplies (specifically enumerating the items) and closed his letter by saying:

*"This letter will be your authority to ship this material in accordance with Mr. Higgins' request. For your information will state that I will personally guarantee this bill."* (Italics supplied.)

This is almost tantamount to an express order to ship the material. To this the defendant adds: "For your information will state I will personally guarantee this bill." The bill with the amount was stated in the letter so that defendant knew exactly what the amount was he guaranteed. There was no element of uncertainty in that regard, nor does there appear to be any condition whatever attached to the guaranty. It was made upon the request of Higgins upon the assurance that the goods would not be shipped without, and the defendant had been so informed. If this guaranty is conditional upon any contingency whatever, the writer has been unable to discover it. It is, however, contended by appellant that the guaranty was signed by him without any previous request of the other party and without any consideration from him, and was therefore merely an offer of guaranty. In support of this proposition appellant cites the note to *Smith* v. *Thesmann*, 15 Ann. Cas. 1166.

Appellant himself testified at the trial that he sent the

letter containing the guaranty to Col. Wall because Higgins told him that Col. Wall demanded a guaranty, and that he sent it to comply with that request. This would seem to be equivalent to a direct request from Col. Wall. To view it in any other light would be to give effect to the mere shadow of things and entirely disregard the substance.

But, as against appellant's contention that request must proceed directly from the guarantee, respondents cite the following cases: *McCarroll* v. *Red Diamond*  7 *Clothing Co.*, 105 Ark. 443, 151 S. W. 1012, 43 L. R. A. (N. S.) 475; *Fisk* v. *Stone*, 6 Dak. 35, 50 N. W. 125; *Hartford-Ætna Nat. Bank* v. *Anderson*, 92 Conn. 643, 103 Atl. 845; *Falls City Const. Co.* v. *Boardman*, 111 Ark. 415, 163 S. W. 1134. In the light of these authorities there is no merit in appellant's contention, even if he had not admitted that he sent the guaranty in response to Col. Wall's demand.

It is further contended by appellant that, because the words of the guaranty "I will personally guarantee this bill" are expressed in the future tense, it is therefore a mere offer of guaranty and required acceptance. This is manifestly an unreasonable interpretation of the mean-  8 ing of appellant's letter. As contended by respondents' counsel, it might just as well be contended that the words "this will be your authority" did not authorize the immediate shipment of the goods.

There is no error in the record.

Judgment affirmed at appellant's cost.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.