CARRIER BROKERS, INC., a Utah Corporation, Plaintiff,

v.

SPANISH TRAIL, a Utah corporation, Roger H. Mattson and John Does 1 through 6, Defendants.

SPANISH TRAIL, a Utah corporation, Third–Party Plaintiff and Appellant,

v.

C.A. BAILEY and J.M. Stoof, Third–Party Defendants and Respondents.

No. 870486–CA.

Court of Appeals of Utah.

March 9, 1988.

Gerald M. Conder (argued), Salt Lake City, for third-party plaintiff and appellant.

David E. Halliday (argued), Snow & Halliday, Salt Lake City, for third-party defendants and respondents.

Before GREENWOOD, ORME and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Spanish Trail appeals from the judgment of the trial court releasing C.A. Bailey ("Bailey") from his personal guaranty of an agreement between Spanish Trail and Carrier Brokers, Inc. ("Carrier"). We affirm.

Spanish Trail and Carrier entered into an agreement whereby Spanish Trail, a food broker who purchases and sells distressed and surplus food items, loaned Carrier $200,000 for 40 days so that Carrier could purchase 60,000 cases of Coca-Cola. Repayment was to be $200,000 plus $10,000, or 20% of the profits received from the sale of the Coca-Cola, whichever was greater. Bailey, president of Carrier, and Stoof, manager of Carrier, personally guaranteed the contract. The contract provides in pertinent part, with our emphasis:

4. INTEREST: Any and all funds due Spanish Trail under the terms of this Agreement not timely paid shall bear

interest at the rate of twenty-five (25%) percent per annum until paid or collected. If the terms of this Agreement are breached by Carrier, damages and any delinquency of principal shall bear interest at the rate of twenty-five (25%) per annum until principal and interest is fully paid *and Carrier and/or Guarantor hereby waives its right to presentment, demand, protest, notice of dishonor and extension of time without notice and Carrier further consents to release of any security of collateral hereunder, or any part thereof, with or without substitution.*

5. PERSONAL GUARANTEE: the signature of the guarantors hereto obligates the named guarantors jointly and severally to guarantee full and faithful performance on behalf of Carrier of all of the terms, conditions, covenants, and agreements herein contained.

6. COLLATERAL: Carrier hereby acknowledges and agrees that the Coca-Cola is hereby pledged to Spanish Trail as collateral to secure this Agreement. *Spanish Trail hereby agrees that if it became necessary it would first pursue and exhaust its remedy for repayment of any funds due it under the terms of this Agreement by taking the Coca-Cola without court order and selling the same in any reasonable commercial fashion.* Carrier upon default or its breach of this agreement hereby agrees to immediately release and convey without bond or court order to Spanish Trail the Coca-Cola. Secondly Carrier pledges as collateral its equity in its real estate by way of a second deed of trust in and thereto to Spanish Trail, and if necessary same will be applied towards fulfilling this Agreement after Spanish Trail has exhausted its remedy of using its best efforts in selling the Coca-Cola. *Having exhausted the aforementioned remedies and if any delinquency still exists under the terms of this Agreement then Spanish Trail can pursue said delinquency against the undersigned Guarantor and Carrier either jointly or severally.*

Stoof was only able to purchase $80,000 worth of Coca-Cola. The remainder of the funds was used to purchase $60,000 worth of ice cream and $20,000 worth of fish, with the remaining $40,000 unaccounted for.

When Stoof informed Spanish Trail that Carrier was unable to purchase $200,000 worth of Coca-Cola, and instead had purchased ice cream and fish, the agreement was modified to change the interest rate of 25% per annum (as outlined in paragraph 4 above) to 5% per month or 60% per annum. Stoof and Spanish Trail negotiated this modification and memorialized it in a handwritten addendum to the agreement. Bailey was not aware of the substitution of collateral or the modification of the interest rate until Carrier defaulted.

Spanish Trail filed suit against Carrier and Bailey and Stoof personally to collect the remaining amount due under the contract. The trial court found Carrier liable under the agreement. The court found that paragraph 4 of the agreement, insofar as it allowed substitution of collateral, was not applicable to the guarantors. Consequently the court concluded that the purchase of the ice cream and fish released the guarantors from liability. However, the court held that Stoof was estopped from denying liability on his guaranty because he personally negotiated the substitution of collateral. The court held that Bailey was not estopped from denying liability on his guaranty. Spanish Trail appeals the court's decision as to Bailey.

We affirm the trial court's conclusion that Bailey was released from his personal guaranty and that he was not estopped from claiming that the substitution of collateral released him from liability.

GUARANTY

I

■ The first issue on appeal is whether Bailey was released from his guaranty.

The answer depends in large part on whether Bailey's guaranty was absolute or conditional. This presents a legal question as it involves the interpretation of what we believe is an unambiguous written contract. *Wilburn v. Interstate Electric*, 748 P.2d 582, 585 (Utah Ct.App.1988); *Craig Food Indus., Inc. v. Weihing*, 746 P.2d 279, 283 (Utah Ct.App.1987). Accordingly, we review the trial court's conclusion for correctness. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

■ An instrument purporting to establish liability against a guarantor must be strictly construed, *Valley Bank & Trust Co. v. Rite Way Concrete Forming, Inc.*, 742 P.2d 105, 110 (Utah Ct.App.1987), and is not to be expanded beyond the fair import of its terms. *George E. Failing Co. v. Cardwell Inv. Co.*, 190 Kan. 509, 376 P.2d 892, 897 (1962).

■ An absolute guaranty is defined as a guaranty of the payment of an obligation without words of limitation or condition. *Valley Bank*, 742 P.2d at 108. A conditional guaranty exists when its terms import some condition precedent to the liability of the guarantor. When the guaranty is not enforceable immediately upon default, but some contingency must happen or the guarantee must take some steps to fix liability, the guaranty is conditional. *Wall v. Eccles*, 61 Utah 247, 251, 211 P. 702, 703 (1922). The difference is crucial. If a guaranty is absolute the creditor need not pursue its remedies against the principal debtor or the security before proceeding against the guarantor. On the other hand, with a conditional guaranty the creditor may first be required to reasonably pursue the debtor or designated security, or both, and failure to do so releases the guarantor. *See Valley Bank*, 742 P.2d at 108.

■ The guaranty in this case expressly conditions the guarantors' liability upon Spanish Trail's inability to seek satisfaction from the Coca–Cola. Only after taking the Coca–Cola can Spanish Trail proceed against the guarantors. The contractual language we rely on provides with our emphasis:

6. COLLATERAL: Spanish Trail hereby agrees that if it became necessary *it would first pursue and exhaust its remedy for repayment of any funds due it under the terms of this Agreement by taking the Coca–Cola without court order and selling the same in a reasonable commercial fashion.* Carrier upon default or its breach of this agreement hereby agrees to immediately release and convey without bond or court order to Spanish Trail the Coca–Cola. *Having exhausted the aforementioned remedies and if any delinquency still exists under the terms of this Agreement then Spanish Trail can pursue said delinquency against the undersigned Guarantor* and Carrier either jointly or severally.

As this provision clearly states, Spanish Trail had to pursue the Coca–Cola before pursuing Bailey, thus creating a conditional guaranty.

## II

■ Dealings between the debtor and the primary obligor which materially modify the terms of the guarantor's undertaking generally result in the discharge of the guarantor's obligation. *Essex Int'l, Inc. v. Clamage*, 440 F.2d 547, 550 (7th Cir.1971). The liability of the guarantor depends upon conformity with the procedural terms set forth in the guaranty. *Failing*, 376 P.2d at 898. In *Failing*, the terms of the guaranty required the sending of invoices to the guarantor. The court found that the creditor's duty to send the invoices was a condition precedent and that the creditor's failure to send copies of the invoices to the guarantor released the guarantor from liability. The court went on to state that even compensated guarantors are not liable when the original contract on which their undertaking was made is materially changed without their assent. *Id.*

■ The substitution of other collateral for the Coca–Cola made it impossible for Carrier to perform the condition precedent

to Bailey's liability, namely liquidation of the Coca–Cola collateral. Thus, the obligation of Bailey as a guarantor can not be enforced. *Bellevue Square Managers v. Granberg,* 2 Wash.App. 760, 469 P.2d 969, 973 (1970). *See also Denton v. Fireman's Fund Indemnity Co.,* 352 F.2d 95, 96 (10th Cir.1965); 6 A. Corbin, Contracts § 1252 (1962).

While it may seem that Carrier has been deprived of the benefit of its bargained for guarantee with Bailey, it must be remembered that Bailey gave his guaranty in expectation that Spanish Trail would purchase Coca–Cola, a product for which there is high demand and long shelf life. Had the loan been used as Bailey contemplated, Bailey would have incurred little financial risk. Instead, Bailey's expectations were disturbed when Carrier agreed to purchase perishable commodities. The greater financial risk attendant to such commodities materialized when the fish proved to be spoiled, a risk Bailey simply had not bargained for.

### III

■ A guarantor can waive a condition such as the pursuit of collateral, but such consent must be explicit and should only be by the most unequivocal language in the guaranty contract. *Valley Bank,* 742 P.2d at 109; *Behlen Mfg. Co. v. First Nat'l Bank of Englewood,* 28 Colo. 300, 472 P.2d 703, 707–708 (1970). Spanish Trail contends that the agreement allowed for the substitution of collateral, thus constituting a waiver of the condition precedent that recourse is first satisfied with the collateral. Paragraph 4 of the agreement states:

*Carrier and/or Guarantor hereby waives its right to presentment, demand, protest, notice of dishonor and extension of time without notice and Carrier further consents to release of any security of collateral hereunder, or any part thereof, with or without substitution.*

■ The language is clear that both Carrier and the guarantors waive their rights to presentment, demand, protest, notice of dishonor, and extension of time without notice. The language is equally clear that only Carrier, and *not* the guaran-

tors, consent to substitution of collateral. In *Behlen,* the Colorado court was faced with a similar situation. The only waiver in the guaranty agreement had to do with notice of nonpayment, protest, extension of the note and partial payment. There was no waiver relating to the collateral. The court held that since the language did not meet the "clear and unequivocal language test", there was no waiver. *Behlen,* 472 P.2d at 708.

Spanish Trail also relies on paragraph 5, which states:

> 5. PERSONAL GUARANTEE: The signature of the guarantors hereto obligates the named guarantors jointly and severally to guarantee full and faithful performance on behalf of Carrier of all of the terms, conditions, covenants and agreements herein contained.

This clause cannot be used to displace the language of paragraph 4 and certainly does not rise to the level of a "clear and unequivocal" consent to the release of the Coca–Cola.

### EQUITABLE ESTOPPEL

■ Spanish Trail argues that Bailey, as president of Carrier, should be estopped from denying that the substitution of other collateral for the Coca–Cola released him from liability. The elements of equitable estoppel are: conduct by one party which leads another party; in reliance thereon; to adopt a course of action resulting in detriment or damage if the first party is permitted to repudiate his conduct. *Blackhurst v. Transamerica Ins. Co.,* 699 P.2d 688, 691 (Utah 1985). The doctrine of estoppel applies when one party knowingly induces another by some act or admission to take a detrimental course of action. *Triple I Supply v. Sunset Rail, Inc.,* 652 P.2d 1298, 1302 (Utah 1982).

The trial court found that Stoof, the manager of Carrier, was liable on his guaranty because he knew of the substitution of collateral. It was Stoof who requested the substitution and negotiated the change. Because of Stoof's knowledge and involvement in the substitution, the court was correct in finding that Stoof was estopped

from denying liability. Bailey, on the other hand, knew nothing of the substitution until the loan was in default. The mere fact that he is the president of Carrier is not enough to impute knowledge to him, which he concededly did not have in his individual capacity as a guarantor. Because Bailey had no knowledge of the substitution, his conduct could not have misled Spanish Trail. Therefore, the trial court was correct in finding that Bailey was not estopped from claiming that the substitution of collateral released him from liability.

We need not reach the other issues raised by the parties as our holding on the issue of the substitution of collateral is dispositive. Accordingly, the decision of the trial court is affirmed.

GREENWOOD and ORME, JJ., concur.