2013 UT App 188

# THE UTAH COURT OF APPEALS

DIANE DiMEO,
Plaintiff and Appellee,
*v.*
NUPETCO ASSOCIATES, LLC,
Defendant and Appellant.

Memorandum Decision
No. 20120395-CA
Filed July 26, 2013

Second District, Farmington Department
The Honorable John R. Morris
No. 060700354

James C. Swindler and Callie Buys, Attorneys for
Appellant
George A. Hunt and Mark R. Anderson, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES WILLIAM A. THORNE JR. and STEPHEN L. ROTH
concurred.

ORME, Judge:

¶1　　Nupetco Associates, LLC (Nupetco) appeals rulings by the district court granting partial summary judgment in favor of Diane DiMeo, denying Nupetco's motion for partial summary judgment, and dismissing its counterclaim. The case revolves around a trust deed conveyed over thirty years ago by DiMeo's predecessors in interest, who died in 1987. We reverse and remand for further proceedings.

¶2　　In July 1982, B.I. Associates and several members of the Strand family executed a promissory note for $373,909.13 in favor

of Murray First Thrift & Loan Company. Payment on the note was due monthly, with the final payment due ten years later in July 1992. The note was secured by a trust deed that granted a security interest in real property owned by Vern and Eleanor Strand, who were among the obligors on the note. The note was transferred several times before ultimately being acquired by Nupetco.

¶3     Both Vern and Eleanor passed away in 1987. Following their deaths, Michael Strand, also one of the original obligors, was the only one who made occasional payments on the note. In 1990, the note had still not been paid in full, and Michael waived any defenses to his payment obligation. He continued to make periodic payments over the next fifteen years. Neither Vern nor Eleanor ever made a payment on the note before their deaths, and neither of their estates made any payment following their deaths.

¶4     In 2006, Diane DiMeo, who had been appointed as Eleanor's personal representative, brought this action to quiet title in the property securing the note. DiMeo argued that the trust deed could not be enforced because foreclosure was barred by the statute of limitations. DiMeo and Nupetco both moved for partial summary judgment. The court ruled in favor of DiMeo. The district court first ruled that Vern, Eleanor, and their estates were no longer personally liable on the note because the statute of limitations had run as to their obligation by no later than 1998. *See* Utah Code Ann. § 78B-2-309(2) (LexisNexis 2012) (requiring an action to be brought on any obligation or writing within six years of its creation); *id.* § 78B-2-113(1) (explaining that the running of the statute of limitations begins anew each time a payment on or acknowledgment of the debt is made by the debtor).[1] The court

---

1. Utah Code sections 78B-2-309 and 78B-2-113, formerly appearing in the Utah Code as sections 78-12-23 and 78-12-44, respectively, were renumbered in 2008. *See* Utah Code Ann. § 78B-2-309 amend. notes (LexisNexis 2012); *id.* § 78B-2-113 amend. notes. As the

(continued...)

next ruled that the trust deed was unenforceable because Vern's and Eleanor's legal status under the note changed from that of obligors to sureties when, due to the running of the statute of limitations, Nupetco's ability to collect from them personally had expired. The district court further determined that modifications, such as extension of the note's payoff date and the permitting of interest-only payments, were made to the note after Vern and Eleanor's death. Reasoning that because sureties are exonerated when material modifications are made to the underlying contract without their consent, the district court concluded that "any security pledged [by Vern and Eleanor] to secure the obligation must . . . be discharged, and no recourse may be had to that security in enforcement of the [n]ote." Nupetco filed a motion seeking to have the district court alter or amend the judgment. The motion was denied.

¶5    In 2009, DiMeo filed an amended complaint adding additional parties to the action. Nupetco filed an answer and counterclaim, seeking judgment on the note against Michael Strand as well as foreclosure of the trust deed. The district court dismissed Nupetco's pleading. Nupetco appeals.

¶6    "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). Summary judgment is appropriate when a party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). No issue of material fact exists because the parties have stipulated to all of the relevant facts, and neither party contests that Michael's obligation

---

1. (...continued)
substance of these statutes remains unchanged in the renumbered versions, we cite the most recent codification as a convenience to the reader.

on the note is alive and well. The only remaining question is whether the trust deed still validly secures the obligations due under the note. We conclude that it does and that Nupetco's motion for partial summary judgment—not DiMeo's—should have been granted.

¶7     A trust deed secures the obligations due under a note by transferring a security interest in real property to a trustee to be held until the debt is repaid. Utah Code Ann. § 57-1-19 (LexisNexis 2010); *First Sec. Bank of Utah, NA v. Banberry Crossing*, 780 P.2d 1253, 1256 (Utah 1989). In other words, the pledged property is used as collateral for the obligation and can be foreclosed in the event of default. *See Black's Law Dictionary* 476 (9th ed. 2009); Restatement (Third) of Property: Mortgages Introduction (1997). Here, Michael has failed to meet his obligations under the note now held by Nupetco—a note secured by a trust deed that grants a security interest in the property formerly owned by Vern and Eleanor and now owned by Eleanor's estate. Because Michael has failed to repay the loan, Nupetco is entitled to foreclose the trust deed. Indeed, this is the remedy the law requires Nupetco to pursue because the "one action" or "security first" rule prevents Nupetco from pursuing a judgment against Michael personally until the security interest in real property has been first applied against the amount due. *See* Utah Code Ann. § 78B-6-901(1) ("There is only one action for the recovery of any debt, or the enforcement of any right, secured solely by mortgage upon real estate[.]"); *Machock v. Fink*, 2006 UT 30, ¶ 12, 137 P.3d 779 ("We have interpreted this statute as preventing a creditor from 'suing the debtor personally on the note until it first forecloses against the real property.' We have also recognized the statute's applicability to trust deeds.") (quoting *City Consumer Servs., Inc. v. Peters*, 815 P.2d 234, 236 (Utah 1991)); *APS v. Briggs*, 927 P.2d 670, 672–73 (Utah Ct. App. 1996) (holding that the one action rule requires that "the security be exhausted first").

¶8     DiMeo does not dispute these general precepts but argues that the district court was correct in denying Nupetco summary judgment because it determined that the trust deed was

unenforceable. The district court arrived at this conclusion by first determining that the statute of limitations barred Nupetco from seeking a remedy against Vern and Eleanor personally. The court pointed to *Holloway v. Wetzel*, 45 P.2d 565 (Utah 1935), which states that "a part payment . . . by one of two or more joint and several obligors does not of itself suspend the running of the statute of limitations against the other co-obligor." *Id.* at 568. The district court concluded that under *Holloway*, Michael Strand's periodic and continued payments on the note did not suspend the six-year statute of limitations as to Vern and Eleanor, and that because neither Vern nor Eleanor ever made any payment, the ability of Nupetco to recover against them expired, at the latest, in 1998. We agree with the district court's conclusion that Nupetco's ability to obtain a deficiency judgment against Vern, Eleanor, or their estates has long since expired due to their longstanding failure to make any payments due under the note. While some may have misgivings about the continued relevance of a Depression-era case in adjusting the rights as between co-obligors, it appears that *Holloway* is still good law and that it was applied correctly by the district court to excuse Vern, Eleanor, and their estates from any *personal* liability for the amounts due under the note. Our agreement with the district court's analysis, however, ends there.

¶9    The surety issue seized upon by the district court simply does not hold water. Neither the district court nor DiMeo cite any legal precedent to support the conclusion that when the statute of limitations ran, Vern's and Eleanor's legal status changed from that of obligors to sureties—a change that would have occurred outside of any writing and after the couple's death. The district court's analysis is at odds with the basic maxim of contract interpretation, namely that contracts are interpreted in accordance with the plain meaning of their terms, absent some ambiguity. *See, e.g., Central Florida Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599 ("If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."). *See also Merrick Young Inc. v.*

*Wal-Mart Real Estate Bus. Trust*, 2011 UT App 164, ¶ 17, 257 P.3d 1031 ("The goal of contract interpretation is to give effect to the contracting parties' intentions at the time the contract was made."). The trust deed does not mention or contemplate any type of suretyship. *See* 74 Am. Jur. 2d *Suretyship* § 9 (2012) ("[T]o determine suretyship status, the court first looks to the substance of the entire transaction rather than its form. Generally, an agreement of suretyship must be in writing and must be explicit."). More fundamentally, neither DiMeo nor the district court explains how the mere fact that some obligors on the note can no longer be held personally liable undercuts the continued vitality of the trust deed as security for the note. It is clear to us that the running of the statute of limitations only prevents Nupetco from imposing liability on Vern and Eleanor personally for amounts still due after the security is sold and the proceeds applied to the debt. It had no legal effect on the pair's status as co-obligors on the note, much less did it transform them into sureties. *Cf. Kamas Sec. Co. v. Taylor*, 226 P.2d 111, 117 (Utah 1950) (holding that the "'effect of a statute of limitations is to bar the remedy but not to discharge the obligation'") (quoting Restatement of Security § 47 cmt. a (1941)).[2]

---

2. Even had Vern and Eleanor Strand somehow become sureties, the modifications made to the underlying contract would not have exonerated the pledge of their real property as security for the debt. While DiMeo argues that the time extension for repayment granted to Michael Strand, as well as his interest-only payments, were material modifications of the original contract, such minor alterations are not of the nature or degree that would trigger a discharge of their pledge of security under suretyship law. *See* Restatement (Third) of Suretyship & Guaranty § 41 (1996) ("If the principal obligor and the obligee agree to a modification, *other than an extension of time or a complete or partial release*, of the principal obligor's duties pursuant to the underlying obligation . . . the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation.") (emphasis added). Perhaps

(continued...)

¶10    Finally, we consider the district court's dismissal of Nupetco's counterclaim. The counterclaim, as sought to be amended, requested foreclosure of the trust deed and a judgment against Michael Strand, whom Nupetco wished to have added as a party, in order to obtain a deficiency judgment for any obligation still owed following sale of the secured property. The district court determined that Michael's obligation was irrelevant to the proceedings. However, having determined that the district court erred in ruling that Vern and Eleanor had become sureties and that the trust deed was unenforceable, we conclude that the dismissal of the counterclaim was also in error. Because the trust deed can still be foreclosed—and must be before Nupetco may seek a deficiency judgment against Michael—both Michael's liability and foreclosure of the trust deed were absolutely relevant, and the

---

2. (...continued)

most importantly, Vern and Eleanor agreed to such modifications by the terms of their trust deed. The trust deed provides, with our emphasis, that payments will be made "payable to the order of Beneficiary at the times, in the manner and with interest as therein set forth, and any *extensions and/or renewals or modifications therein or thereof.*" The modifications made to the payment schedule are well within the scope of this standard modification clause. Extending the payment date or allowing interest-only payments are not such extreme changes as would render the modification clause inapplicable or the contract void. *Cf. Nature's Sunshine Prods., Inc. v. Watson*, 2007 UT App 383, ¶¶ 13–15, 174 P.3d 647 (explaining that modification clauses in trust deeds allow parties to make routine modifications to payment arrangements without affecting the trust deed's priority so long as future lenders can reasonably assess their financial position, but extraordinary changes—in that case, modifying the original terms to include a new loan "totally unrelated to the original transaction" and for more than sixteen times the original principal—will not qualify as a modification).

answer and counterclaim should not have been dismissed. And the amendment sought by Nupetco should have been permitted.

¶11     We reverse the partial summary judgment in favor of DiMeo and remand with instructions to grant partial summary judgment in favor of Nupetco and to reinstate Nupetco's counterclaim seeking foreclosure of the trust deed, as well as to permit its amendment.

————