*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 52**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

PC RIVERVIEW, LLC,
*Respondent,*

*v.*

XIAO-YAN CAO,
*Petitioner.*

No. 20160781
Filed August 23, 2017

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Katie Bernards-Goodman
No. 149902947

Attorneys:

Carl E. Kingston, Salt Lake City, for respondent

Russell T. Monahan, Salt Lake City, for petitioner

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUSTICE HIMONAS joined.

JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶1  In 2003, L + C Unlimited Corporation (L + C) was assigned the lease that permitted the Golden Isle Restaurant to operate in a strip mall in Murray, Utah. Xiao-Yan Cao, L + C's president, personally guaranteed L + C's performance. In 2006, the lease was again assigned, this time to Hong G. Lin. As part of that assignment, the lease term was extended until September 30, 2013, and both Cao and Lin inked personal guaranties. In 2010, Lin fell behind making rent payments. Lin and PC Riverview, the property's landlord, agreed to a repayment schedule to permit Lin to catch up, which he did. In 2013, Lin defaulted on rent payments shortly before vacating

the premises. PC Riverview sued both Lin and Cao for $5,003.50, a sum that represented the last month's rent and a small balance from the penultimate month.[1] Cao resisted paying that amount, arguing that the 2010 repayment schedule materially modified the contract and discharged her guaranty. The district court agreed and ruled in Cao's favor.

¶2 The Utah Court of Appeals reversed the district court's order. Relying on the Restatement (Third) of Suretyship and Guaranty, the court of appeals reasoned that merely extending the period within which a tenant could pay its rent did not materially modify the contract. It concluded that Cao was therefore still on the hook for Lin's past-due rent.

¶3 Cao seeks our review of the court of appeals' decision. We conclude that the court of appeals correctly determined that the 2010 repayment agreement did not materially modify the contract and that Cao is not relieved of her responsibilities as guarantor. We affirm the court of appeals' decision.

## BACKGROUND

¶4 In 1993, the restaurant at the heart of this matter operated as Royal China Restaurant. Over the next decade, Royal China changed its name, its landlord, and its owner—the latter a number of times.

¶5 The first change took place in 1997, when the lease was assigned to new tenants. The assignment included a provision imposing late fees and interest if rent was not paid on time. The restaurant's name also changed to Golden Isle Restaurant.

¶6 In 2003, the lease was again assigned to a new tenant, L + C. Appellant, L + C's president, Xiao-Yan Cao, personally guaranteed to then-landlord Riverview Properties the "performance of all covenants, conditions and obligations and duties required of Tenant under said Lease." That assignment also provided that, "[e]xcept as specifically modified, altered, or changed by this Agreement, *the Lease and any amendments and/or extensions shall remain unchanged and in full force and effect* throughout the Extension Term of the Lease." (Emphasis added.) Those amendments and extensions included the

---

[1] PC Riverview also sought interest and attorney fees.

1997 provision detailing late fees and interest on past-due amounts owed.

¶7 Then in 2006, Cao assigned the lease to another tenant, Hong G. Lin. Lin took over the remaining two years of L + C's lease and extended the lease an additional five years—to September 30, 2013. Both Cao and Lin signed the 2006 Lease Extension as guarantors. The 2006 Lease Extension also adopted all terms of the original lease and "any amendments and/or extensions"—again including the 1997 provision detailing late fees and interest on past-due amounts owed and Cao's 2003 personal guaranty.

¶8 A month later, in June 2006, Riverview Properties assigned its "interest as landlord" in the strip mall that housed Golden Isle to a new landlord, PC Riverview.

¶9 In 2008, Lin fell behind paying rent. This lapse continued over the course of almost two years. In 2010, PC Riverview filed suit against Lin and Cao. PC Riverview sought collection of Lin's missed rent plus late fees—a total of $23,951.28 from Lin and the enforcement of the guaranty against Cao. Cao responded by asking the district court to stanch her potential losses by evicting Lin. PC Riverview opposed Cao's efforts. As part of that opposition, PC Riverview introduced evidence that, given the economic conditions, it would be unable to find another tenant to lease the space Lin's business occupied. Cao also filed a motion for summary judgment. The district court stayed Cao's motion and ordered the parties to mediate the matter.

¶10 Unbeknownst to Cao, PC Riverview and Lin crafted a plan that would allow Lin to operate the restaurant while paying PC Riverview what it owed in missed payments, interest, and late fees (the 2010 repayment agreement). Cao learned of that agreement when she was faxed a copy of an executed agreement. The 2010 repayment agreement provided that in addition to the regular monthly payments that the lease required, Lin would make five additional payments to repay past-due amounts. If Lin made each payment when due, PC Riverview agreed to forgive seven-eighths of the late charges that had accrued.

¶11 In light of the repayment plan, PC Riverview proposed to Cao that she stipulate to the dismissal of the action without prejudice. Cao refused. She wrote to PC Riverview explaining that she believed this "side agreement" entered into "without [her] input or knowledge" had "terminated" "her responsibilities as surety on

this contract." Cao and PC Riverview never reached an accord, and after a year of inaction on the case, the district court dismissed the complaint for failure to prosecute.

¶12 Meanwhile, Lin stuck to the terms of his new agreement with PC Riverview and eventually paid back all past-due rent and late fees. One might have thought that this would have signaled a happy ending to this story—and, indeed, 2012 came and passed without incident. But in 2013, as Lin's lease was poised to expire, Lin vacated the premises without paying the last month's rent and a small balance he owed for the previous month. PC Riverview sued both Lin and Cao to recover the $5,003.50 that Lin owed (as well as interest and attorney fees). The district court granted summary judgment against Lin, but not Cao. The case against Cao proceeded to trial.

¶13 At trial, PC Riverview called the president of its managing member, Grace Mitchell, to testify about the assignment from Riverview Properties to PC Riverview. She identified a document that detailed an "assignment and assumption of leases that [were] entered into when [PC Riverview] purchased the property" in 2006. Cao objected to the document being entered into evidence because the signatories on behalf of the seller were not present to testify that they signed the document. Mitchell then testified that she had witnessed Riverview Properties' representatives sign the document. The district court admitted the document into evidence.

¶14 In closing argument, Cao contended, first, that the evidence was insufficient to establish that Riverview Properties had ever properly assigned its lease to PC Riverview and, second, that the 2010 repayment agreement materially modified the 2006 contract, thereby releasing Cao as guarantor.

¶15 The district court ruled for Cao. It determined that "there was a material modification when [PC Riverview] had Mr. Lin's rent so far behind and allowed him to make changes and differences to that and didn't notify the guarantor of that." The district court reasoned that "if I'm guaranteeing something and there's changes like that and somebody's way behind and they're letting them catch up and they're not telling me, I would consider that a material modification." Because it found that Cao had been released from the guaranty, the district court announced that it did not need to reach the question of whether the lease had been properly assigned to PC Riverview.

¶16   PC Riverview appealed the district court's ruling to the Utah Court of Appeals. The court of appeals reversed the district court. *PC Riverview LLC v. Cao*, 2016 UT App 178, ¶ 8, 381 P.3d 1185. It concluded that Cao's guaranty "contained no provisions spelling out particular rights in favor of Cao, such as a right to notice or a bar on extensions or modifications absent her consent." *Id.* ¶ 5.

¶17   The court of appeals relied on section 41 of the Restatement (Third) of Suretyship and Guaranty when it stated that as a general rule, "a guarantor is relieved of her obligations '[i]f the principal obligor and the obligee agree to a modification.'" *Id.* ¶ 6 (alteration in original) (citing RESTATEMENT (THIRD) OF SUR. AND GUAR. § 41 (AM. LAW INST. 1996)). "But," the court continued, "the Restatement specifically excludes 'an extension of time' from the modifications that would discharge a guarantor." *Id.* (citation omitted). The court of appeals thus reasoned that

> Cao was not relieved of her obligations as guarantor because the [2010 repayment agreement] was the sole modification to the original lease, and [it] only modified the timing of [Lin]'s payments by extending the time in which past due rent could be paid.

*Id.* ¶ 7.

¶18   Cao now seeks our review of the court of appeals' decision. On certiorari, she argues that the 2010 repayment agreement materially altered the terms of the underlying agreement and that she, therefore, should be released from her obligation under it. She also argues that the district court improperly accepted PC Riverview's lease assignment into evidence and that the court of appeals erred when it did not remand for findings on whether her lease had expired or whether she and PC Riverview were ever in privity of contract.

¶19   We have jurisdiction under Utah Code section 78A-3-102(3)(a). We affirm.

**STANDARD OF REVIEW**

¶20   On certiorari, we review the court of appeals' decision for correctness. *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096.

## ANALYSIS

### I. The 2010 Repayment Agreement Between Lin and
### PC Riverview Did Not Materially Modify Cao's Guaranty

¶21 Cao's primary argument centers on the court of appeals' holding that the district court erred when it characterized the 2010 repayment agreement between Lin and PC Riverview as a material modification that freed Cao from her guaranty. Cao correctly notes that a material modification to a contract will free the guarantor from her guaranty obligations. *See, e.g.*, *DiMeo v. Nupetco Assocs., LLC*, 2013 UT App 188, ¶ 9 n.2, 309 P.3d 251. But "minor alterations" to a debtor-creditor agreement "are not of the nature or degree that would trigger a discharge of [the sureties'] pledge of security under suretyship law." *Id.* Cao lodges two complaints against the court of appeals' conclusion that Lin and PC Riverview did not materially modify their contract.

¶22 First, Cao avers that the court of appeals ignored facts demonstrating that Lin and PC Riverview had modified the lease through their actions even before they entered into the 2010 repayment agreement. Specifically, Cao claims that PC Riverview materially modified the lease when it (1) allowed Lin to stay in the property even after falling behind in the rent and (2) did not notify Cao that Lin was delinquent in paying rent.

¶23 Cao misreads the court of appeals' decision. The court of appeals addressed and rejected Cao's contentions. It noted that the "rights and obligations of a guarantor are often defined in the terms of the guaranty" and that "absent express terms to the contrary, '[t]he basic rights and duties of parties under a guaranty are governed by common law.'" *PC Riverview LLC v. Cao*, 2016 UT App 178, ¶ 5, 381 P.3d 1185 (alteration in original) (quoting 38 AM. JUR. 2D *Guaranty* § 53 (2016)). Cao's guaranty provides that Cao "shall be the Guarantor and hereby guarantees performance of all covenants, conditions and obligations and duties required of Tenant under said Lease." The court of appeals reviewed the terms of the guaranty and noted that it did not offer Cao what she wanted—notice of Lin's default and the right to consent to modifications. *Id.* ("Here, the guaranty agreement contained no provisions spelling out particular rights in favor of Cao, such as a right to notice or a bar on extensions or modifications absent her consent."). Although the court of appeals could have been more explicit, its opinion reflects that PC Riverview did not modify the parties' obligations under the lease when it

permitted Lin to continue to operate the restaurant while falling behind in rent payments. Rather, the court of appeals concluded that the arrangement was consistent with the terms of the lease that Cao agreed to guarantee. Indeed, by asking the district court to find that she had a right to notice of default and an opportunity to intervene, it was Cao who sought to modify the parties' agreements.[2]

¶24 Second, Cao argues that the court of appeals misapprehended the significance of the 2010 repayment agreement when it reasoned that the agreement did not materially modify the terms of her agreement with Lin. The court of appeals explained that "[b]ecause the [2010 repayment agreement] only extended the time for [Lin] to pay past due rent, it was not a material modification of the original agreement" under section 41 of the Restatement (Third) of Suretyship and Guaranty. *PC Riverview*, 2016 UT App 178, ¶ 8.

¶25 Cao contends that "an extension of time does materially modify a lease" and that Lin and PC Riverview's 2010 repayment agreement materially modified her obligations as guarantor, thereby discharging her of her personal guaranty. Cao appears to argue that there are some extensions of time that might materially modify a lease. We need not reach that question, however, because the record makes plain that the 2010 repayment agreement was not a material modification. Before the modification, Cao was potentially responsible for Lin's rent, interest, and late fees. And after the 2010 repayment agreement, Cao could have been responsible for Lin's rent, interest, and late fees.

¶26 Minor alterations to the underlying agreement do not materially alter the risk the guarantor agreed to assume. *See DiMeo*,

---

[2] Cao's desire to receive notice of Lin's failure to pay rent is understandable. And it is natural that a party in Cao's position would want that notice so that she could take steps to assist Lin from falling further behind and limit her liability under the guarantee. The court of appeals, however, got it precisely right when it held that Cao did not bargain for these additional protections in the guaranty. As we have said on many occasions, it is not the judiciary's role to draft better agreements for parties than those they draft for themselves. *See, e.g., Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 505 (Utah 1980) ("A court will not . . . make a better contract for the parties than they have made for themselves.").

2013 UT App 188, ¶ 9 n.2. As noted above, section 41 of the Restatement (Third) of Suretyship and Guaranty recognizes this principle:

> If the principal obligor and the obligee agree to a modification, other than an extension of time or a complete or partial release, . . . the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation: (i) if the modification creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification; (ii) in other cases, to the extent that the modification would otherwise cause the secondary obligor a loss.

RESTATEMENT (THIRD) OF SUR. AND GUAR. § 41 (AM LAW INST. 1996).

¶27 Prior to its decision in this case, the court of appeals had analyzed section 41 of the Restatement and rejected an argument that a time extension coupled with the ability to make interest-only payments was a material modifications that would relieve a surety of her obligations. *See DiMeo*, 2013 UT App 188, ¶ 9 n.2. Other courts have reached a similar result. *See, e.g.*, *Sheet Metal Workers' Local Union No. 100 Wash., D.C. Area Pension Fund v. W. Sur. Co.*, 187 F. Supp. 3d 569, 582, 583–84 (D. Md. 2016); *Cent. Bldg., LLC v. Cooper*, 26 Cal. Rptr. 3d 212, 217–18 (Ct. App. 2005).

¶28 Much like the modification at issue in *DiMeo*, the modification Lin and PC Riverview made changed only the timing of the payments—and did that only within the timeframe contemplated by the terms of the original contract. Lin and PC Riverview's 2010 repayment agreement anticipates that Lin will "follow[] [the] payment plan . . . on the past due balance of the lease agreement." The agreement then sets out the repayment schedule, allowing Lin to repay PC Riverview in five payments by January 1, 2011.[3]

---

[3] We assume January 1, 2011, is the correct date of the final payment between Lin and PC Riverview. The exact dates lead from September 1, 2010, monthly through January 1, 2010, which we assume is a clerical error.

¶29 The terms of the 2010 repayment agreement extend the time within which Lin can pay back "the past due balance *of the lease agreement*." (Emphasis added.) The 1997 lease—which Cao adopted in her 2003 assignment—contemplated just such a scenario: the terms of that provision provide for "late fees" on "past due amount[s]" and interest on those amounts. Moreover, the lease permitted PC Riverview to waive the lease's conditions and covenants at its discretion. In other words, PC Riverview had the contractual right to waive the late fees and interest that Lin had allowed to accrue. Thus, the 2010 repayment agreement added no terms to the original agreement.

¶30 The only argument Cao levels against the court of appeals' application of Restatement section 41 focuses on Cao's purported status as a personal and uncompensated guarantor.[4] We recognize that a number of courts—including ours—have drawn an analytical distinction between compensated and uncompensated sureties. Gratuitous sureties are "motivated by selfless generosity" in guaranteeing another's debt and "enter[] into guaranty agreements for reasons involving familial or neighborly affection and [do] not profit financially from the transaction." *Garden State Tanning, Inc. v. Mitchell Mfg. Grp., Inc.*, 273 F.3d 332, 336 (3d Cir. 2001). Because gratuitous sureties are not "otherwise interested in the transaction leading up to the suretyship contract," *First Nat'l Bank of E. of Conemaugh v. Davies*, 172 A. 296, 298 (Pa. 1934), they sometimes play by a set of different rules. For example, they are often discharged "[w]here, without [their] consent, there has been a material modification in the creditor-debtor relationship," even without assuming substantially greater economic risk. *Reliance Ins. Co. v. Penn Paving, Inc.*, 734 A.2d 833, 838 (Pa. 1999) (citation omitted); *see also WRS Inc. v. Plaza Entm't, Inc.*, 285 F. App'x 872, 876 (3d Cir. 2008) (noting that "[g]ratuitous sureties are typically discharged '[w]here, without the surety's consent, there has been a material modification

---

[4] Because it does not ultimately change the outcome, we will assume that Cao was an uncompensated guarantor. We note, however, that she did not develop facts before the district court that would allow her to demonstrate persuasively that she was not "interested in the transaction leading up to the suretyship contract." *See First Nat'l Bank v. Davies*, 172 A. 296, 298 (Pa. 1934).

in the creditor-debtor relationship'" but that "[c]ompensated sureties, by contrast, . . . are discharged only when there has been a material modification without the surety's consent and that modification substantially increases the surety's risk") (second alteration in original) (citation omitted).

¶31 We have recognized that uncompensated sureties are "favored by the law." *M.H. Walker Realty Co. v. Am. Sur. Co. of N.Y.*, 211 P. 998, 1010 (Utah 1922) (citation omitted). They "have a right to stand on the terms of their obligation, and, having consented to be bound to a certain extent only, their liability must be found within the terms of that consent, strictly construed." *Id.* (citation omitted). Thus, "if [a surety] does not assent to any variation of [the contract] and a variation is made, it is fatal." *Id.* (citation omitted). But Cao does not persuasively argue that this line of cases cannot be harmonized with Restatement section 41. Indeed, Cao supports her argument with cases that recognize that "[d]ealings between the debtor and the primary obligor which *materially modify* the terms of the guarantor's undertaking generally result in the discharge of the guarantor's obligation." *Carrier Brokers, Inc. v. Spanish Trail,* 751 P.2d 258, 261 (Utah Ct. App. 1988) (emphasis added). And Cao concludes by arguing, "[u]nder these principals [sic], any *material* alteration by Plaintiff and Defendant Lin to the underlying obligation relieved Defendant Cao of her surety obligation."[5] (Emphasis added).

¶32 The 2010 repayment agreement did not materially modify the underlying obligation. As described above, before PC Riverview and Lin entered into the 2010 repayment agreement, Cao faced the potential of having to pay rent for the term of the lease, interest, and late payments. And after PC Riverview and Lin entered into the 2010 repayment agreement, Cao faced the potential of having to pay rent for the term of the lease, interest, and late payments. The 2010 repayment agreement did not expose Cao to different or new terms than she was already exposed to under the lease. There was no material modification. Without more, the mere extension of time at

---

[5] To the extent there are arguments to be made that a materiality requirement is inconsistent with *strictissimi juris*, or that adoption of section 41 of the Restatement (Third) of Suretyship and Guaranty requires us to overturn *M.H. Walker* and its progeny, we will leave those arguments for another day and a different set of briefs.

issue here is "not of the nature or degree that would trigger a discharge of" Cao's duties under her agreement. *See DiMeo*, 2013 UT App 188, ¶ 9 n.2. PC Riverview is thus entitled to enforce the guaranty Cao signed.

### II. The Court of Appeals' Error in Not Addressing Alternative Grounds for Affirmance Was Harmless

¶33   Cao argues that the court of appeals erred when it failed to remand for further factual findings regarding whether her guaranty covered only the original term of the lease and not any extensions. She also contends that the district court erred when it admitted evidence supporting a conclusion that PC Riverview had been properly assigned interests in the lease it sought to enforce and, if that document been excluded, there would have been no evidence she was ever in privity of contract with PC Riverview. Cao specifically argues that, "[a]lthough the Trial Court is granted great discretion in admitting evidence, [it] abused its discretion in this case."

¶34   We begin by noting that the court of appeals did not address these arguments before reversing. When a party raises alternative grounds for affirmance, an appellate court "*may affirm* the judgment appealed from" on "any legal ground or theory apparent on the record." *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (emphasis added) (citation omitted). When the court of appeals reverses, and the appellant has briefed grounds for affirmance that were preserved before the district court, the court of appeals must deal with those arguments by either addressing or remanding them. And although we could remand to the court of appeals so it can have a go at these arguments, we are acutely aware that this is a $5,000 dispute that has now been through a trial, an appeal, and a petition for certiorari. Because we can easily dispose of Cao's alternative grounds, we will address these issues rather than remand to the court of appeals for additional proceedings.

¶35   Cao's first argument is unpreserved. Our rules spell out a preservation requirement, requiring "that an appellant's brief contain a 'citation to the record showing that the issue was preserved in the trial court; or a statement of grounds for seeking review of an issue not preserved.'" *Donjuan v. McDermott*, 2011 UT 72, ¶ 22, 266 P.3d 839 (quoting UTAH R. APP. P. 24(a)(5)(A)–(B)). "[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on

that issue." *Pratt v. Nelson,* 2007 UT 41, ¶ 15, 164 P.3d 366 (citation omitted). An issue "must be specifically raised" "in a timely fashion," in addition to being supported by "evidence or relevant legal authority." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968 (citation omitted).

¶36 With respect to her first argument—that her surety obligation expired with the original lease—Cao fails to cite any place in the record demonstrating that she preserved this argument before the district court. And, while we are not obligated to perform this work for a party, our review of the transcript did not reveal any mention of this argument. We find it unpreserved, and the court of appeals' failure to address it is therefore harmless.

¶37 Cao next argues that the court of appeals should have affirmed because the district court erred when it admitted the document assigning the lease to PC Riverview. Cao contends that if the court had excluded the assignment, there would have been no evidence she was ever in privity of contract with PC Riverview. At trial, Cao pressed her argument that even with the assignment in evidence, there was an insufficient factual basis to find that the lease had been assigned to PC Riverview. Because it ruled for Cao on the material modification issue, the district court opined that it did not need to reach the assignment question. Cao raised this argument before the court of appeals, but the court of appeals neither addressed it nor remanded to permit the district court to resolve the issue.

¶38 The court of appeals' decision to not address the argument did not harm Cao because the district court did not abuse its discretion in admitting the assignment. Rule 901(a) of the Utah Rules of Evidence provides that a "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The rule further states that "Testimony of a Witness with Knowledge" "satisfies the requirement." *Id.* 901(b)–(b)(1) (describing such evidence as "[t]estimony that an item is what it is claimed to be"). Furthermore, "[p]roper authentication does not require conclusive proof but, instead, requires only that the trial court determine that there is 'evidence sufficient to support a finding'" that the item is what the proponent claims it is. *State v. Woodard*, 2014 UT App 162, ¶ 17, 330 P.3d 1283 (citation omitted); *see also* UTAH R. EVID. 901(a), (b)(1); *Pahl v. Comm'r*, 150 F.3d 1124, 1132 (9th Cir. 1998) (concluding no abuse of discretion to admit document

duplicate because witness who observed taxpayer sign original provided adequate testimony to authenticate duplicate under Federal Rule of Evidence 901(b)(1)); *see* 2 GEORGE E. DIX ET AL., MCCORMICK ON EVIDENCE § 222 (7th ed. 2013) ("Proof of [a]uthorship" may be authenticated through "the production of a witness who swears that he saw a specific person write and/or sign the proffered writing. The testimony of a percipient witness satisfies the requirement that evidence sufficient to support a finding be presented. The witness may be anyone—the author or signer, acknowledging execution; a person who simply observed the event; or, a formal subscribing or attesting witness who must be called before other witnesses may authenticate the writing." (footnotes omitted)).

¶39 At trial, the president of PC Riverview's managing member, Grace Mitchell, testified that Riverview Properties had assigned its rights and obligations under the contract to PC Riverview. Mitchell testified as to the authenticity of a document that detailed an "assignment and assumption of leases that [were] entered into when [PC Riverview] purchased the property" in 2006. Cao objected to the document being entered into evidence because no one from Riverview Properties testified about signing the contract. Mitchell then testified as to the authenticity of Riverview Properties' signatures, claiming that the document was signed in her presence. Cao offered no evidence impeaching Mitchell as a witness or casting doubt as to the credibility of her testimony. The district court admitted the document into evidence based on Mitchell's testimony.

¶40 Cao is correct that the rule "places the burden of authenticating the document on the party seeking its admission." But PC Riverview met its burden when it offered Mitchell's testimony authenticating the document. Cao offered no evidence suggesting that the assignment was not authentic. The district court thus did not abuse its discretion in admitting a document that a witness testified was what PC Riverview claimed it was. While the court of appeals erred in failing to address Cao's two alternative grounds for affirmance, its error was harmless.[6]

---

[6] Cao also argues on certiorari that even if the assignment were properly admitted, it does not mention the guaranty, and that,

(continued . . .)

### III. PC Riverview May Collect Attorney Fees

¶41   PC Riverview asks for "its Court costs and attorney's fees, including its costs and attorney's fees incurred on appeal." Cao's 2003 lease assignment provided that, "[i]n the event of default under any of the terms of this Agreement or the Lease, defaulting party agrees to pay all costs incurred in enforcing this Agreement on the Lease or any right arising [out] of the breach of either, and including reasonable attorney's fees." Cao personally guaranteed the terms of that contract. The 2006 lease assignment to Lin—which Cao also personally guaranteed—contains identical language. The court of appeals awarded attorney fees "in accordance with the terms of the agreement entered into among [Lin], Cao, and the prior owner." *PC Riverview LLC v. Cao*, 2016 UT App 178, ¶ 8 n.4, 381 P.3d 1185. Cao does not argue that PC Riverview is not entitled to fees if it prevails before this court. Thus, under the terms of the contract, we award reasonable costs and attorney fees "incurred in enforcing this Agreement" in the district court and on appeal, and we remand to the district court to determine what those reasonable costs are.

## CONCLUSION

¶42   A guarantor is relieved of her obligations under a guaranty if the creditor and debtor materially modify the guaranteed agreement. Here, the 2010 repayment agreement did not materially modify the Lease. While the court of appeals erred in not addressing Cao's alternative grounds for affirmance, the error was harmless. We remand to the district court solely to determine the reasonable costs

---

(continued . . .)

therefore, there was no proof before the district court that the Guaranty had been assigned. Cao ignores Utah Rule of Appellate Procedure 24(a)(5)(A), which requires a "citation to the record showing that the issue was preserved in the trial court," and fails to indicate where in the record she preserved this argument. And, again, even though we are not obligated to comb through the record, we did and were unable to find this argument in the district court record. We are generally not in the business of addressing unpreserved issues. *See In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702 ("We . . . will generally not consider arguments that litigants have failed to raise in the proceedings below.").

and attorney fees incurred by PC Riverview in the district court and on appeal. We affirm the court of appeals' decision.

————————