2001 UT App 99

John C. SITTNER, Appellant,

v.

Karen H. SCHRIEVER, Bruce Gildea, Shirlynn Gildea, and Joy Hale, Appellees.

No. 971759–CA.

Court of Appeals of Utah.

March 29, 2001.

L. Benson Mabey, Mabey & Coombs, LC, Salt Lake City, for Appellant.

William D. Marsh, William Patrick Morrison, Grant W.P. Morrison, Morrison & Morrison, LC, and Randall E. Grant, Grant & Grant, Salt Lake City, for Appellees.

Before Judges JACKSON, BENCH, and BILLINGS.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 John C. Sittner (Sittner) appeals the trial court's grant of summary judgment dismissing his complaint and awarding attorney fees pursuant to Utah Code Ann. § 78–27–56 (1996 & Supp.1999). We reverse.

## BACKGROUND

¶ 2 On or about February 20, 1981, Appellee Joy Hale (Hale), as seller, entered into an seller financed uniform real estate contract with Bruce and Shirlynn Gildea (the Gildeas). On November 25, 1985, Sittner procured a $30,598.35 judgment against Bruce Gildea (Gildea) and others, along with attorney fees and interest. In January of 1986, Gildea initiated bankruptcy proceedings, thereby invoking the Bankruptcy Code's automatic stay. *See* 11 U.S.C.A. § 362(a)(1), (3) (1993). Sittner filed an unsecured claim with the United States Bankruptcy Court based on his judgment.

¶ 3 Thereafter, the bankruptcy trustee (Trustee) filed an adversarial complaint to avoid the judgment lien as a preferential transfer. Sittner and Trustee then stipulated that if Trustee would dismiss the adversary proceeding, Sittner would agree to the following:

(1) The Defendant, John C. Sittner, waives any right to assert a secured claim in and to any property of this estate or any funds which constitute proceeds of property of this estate and acknowledges that any and all claim he has is an unsecured, prepetition claim. Defendant's rights respecting property abandoned by the estate or

not administered by closing are preserved and unaffected hereby.

Upon court approval of the stipulation, Sittner participated as an unsecured creditor and received a pro-rata share of $4,302.99 on his claim of $36,228.73.

¶ 4 On December 14, 1987, U.S. Bankruptcy Judge John H. Allen entered an order discharging Gildea from all personal liability on Sittner's judgment. On February 19, 1988, Judge Allen vacated the automatic stay as to Hale on the property in question. In January, 1992, Hale sold her interest in the uniform real estate contract to Appellee Karen H. Schriever (Schriever), Shirlynn Gildea's sister.[1] As consideration, Hale received the unpaid balance of the contract, discounted for cash. On August 3, 1992, Hale conveyed to Schriever, trustee of the Karen H. Schriever Family Trust, title to the property. Gildea's bankruptcy closed in April of 1992.

¶ 5 On June 28, 1993, Sittner brought a declaratory judgment action against Gildea and other defendants seeking a declaration that his judgment lien was still enforceable against the property. In May of 1994, the trial court granted summary judgment for Appellees, concluding that Sittner's lien did not survive bankruptcy. However, the trial court later reconsidered and granted Sittner's motion for partial summary judgment, concluding that his lien survived bankruptcy and could be enforced in rem. Additional motions for summary judgment were filed, but the trial court proceedings were stayed after Gildea successfully reopened his bankruptcy case to seek relief from the bankruptcy court. There, Gildea obtained a bankruptcy order adverse to Sittner. The United States District Court subsequently reversed and vacated the bankruptcy order, choosing to defer to the state trial court.

¶ 6 On March 25, 1997, the trial court granted Appellees motion for summary judgment, dismissed Sittner's complaint with prejudice, and awarded attorney fees to Appellees pursuant to Utah Code Ann. § 78–27–56 (1996 & Supp.1999). The trial court concluded that Sittner waived his lien during the

1. We refer to Schriever, Hale, and the Gildeas together as "Appellees."

course of the bankruptcy, that the statute of limitations barred the lien, and that Sittner's claims were without merit and were not pursued in good faith. Sittner appeals.

## STANDARD OF REVIEW

¶ 7 We review the trial court's summary judgment rulings for correctness. "We consider only whether the trial court correctly applied the law and correctly concluded that no disputed issues of material fact existed." This is the standard of review we apply because summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Surety Underwriters v. E & C Trucking,* 2000 UT 71, ¶ 14, 10 P.3d 338 (citations omitted). When we review a grant of summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to *the nonmoving party.*" *Id.* at ¶ 15.

## ANALYSIS

### Survival of the Judgment Lien

¶ 8 Sittner argues that his judgment lien on "property abandoned by the estate or not administered by closing" survived the bankruptcy.

¶ 9 It is well settled that a judgment lien survives bankruptcy in rem, though in personam liability on the debt is discharged.[2] Appellees nevertheless argue that because Sittner participated as a Chapter 7 unsecured creditor in Gildeas' bankruptcy, his lien was extinguished either by some sort of implied waiver or by some equitable rule that disallows a creditor from both participating in a Chapter 7 proceeding and pursuing his lien in rem following the bankruptcy.[3] Appellees offer no persuasive legal support for this proposition, and we decline to invent one.[4]

¶ 10 Appellees invoke *Cox Corp. v. Vertin,* 754 P.2d 938 (Utah 1988) to avoid this result, but *Cox* is readily distinguishable. In *Cox,* the lien creditor attempted to renew his lien after bankruptcy discharged the debtor's personal liability on the judgment. *Cox,* 754 P.2d at 939. However, the court in *Cox* upheld the trial court's conclusion that "since the bankruptcy discharged respondents' personal liability on the judgment, . . . neither the judgment nor the judgment lien could be *renewed.*" *Id.* (emphasis added). The court concluded this because a "renewal judgment results in a new judgment," *id.,* and creation of a new judgment requires that personal liability exist. *See id.* (Zimmerman, J., concurring). Thus, since personal liability is necessary for a new judgment and the statu-

2. It is important to note that a discharge in bankruptcy does not eliminate the debt giving rise to a judgment lien. Instead, discharge terminates the debtor's *personal liability* on that debt. *See Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992); *Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886); 9E Am.Jur.2d *Bankruptcy* § 3276 (2000). Thus, it appears that a creditor is precluded from pursuing remedies which require personal liability-e.g., wage garnishment-and is left only with an in rem remedy to satisfy the debt. Nevertheless, the pro-rata distribution Sittner received as an unsecured creditor reduces the amount of the judgment debt.

3. Some courts support extinguishment of a secured creditor's lien when that creditor actively participates in confirming a Chapter 13 plan of reorganization. *See In re Penrod,* 50 F.3d 459, 463 (7th Cir.1995); *Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 93–94 (4th Cir.1995). However, we can

find no instance of such a rule being applied in a Chapter 7 case. Even in a Chapter 13 case, the plan of reorganization must specifically "deal with" the lien, *and* either the creditor must have participated in the proceeding or the debtor must have provided adequate notice of his intent to modify the lien. Also, the debtor is usually obliged to state explicitly that the secured creditor's liens are not passing through the plan unaffected, and to outline the treatment of the secured creditor's claims. *See generally* Mark D. Collins, ed., *Do Pre-existing Liens Really Pass Through Bankruptcy Unaffected?*, Am. Bankr.Inst. Jnl. Nov. 1999, at 158.

4. Appellees provide no support for the proposition that the holding in *Penrod* or similar cases should be extended to Chapter 7 cases, other than analogizing that Sittner also participated in the bankruptcy proceedings. We find the analogy unpersuasive without more support for such a proposition, and we decline to extend such holdings to Chapter 7 cases.

tory scheme does not provide another avenue for renewal of a lien, the lien in *Cox* could not be renewed. *See id.* In the present case, however, we do not consider the *renewing* of a judgment lien, but the *enforcement* of an already existing lien which has merely passed through bankruptcy. Thus, *Cox* offers little guidance here.

■ ¶ 11 Appellees also argue that Sittner expressly waived his lien by entering into the court approved stipulation:

> The Defendant, John C. Sittner, waives any right to assert a secured claim in and to any property of this estate or any funds which constitute proceeds of property of this estate and acknowledges that any and all claim he has is an unsecured, pre-petition claim. *Defendant's rights respecting property abandoned by the estate or not administered by closing are preserved and unaffected hereby.*

(Emphasis added.) While Sittner obviously waived his lien for administered or non-abandoned property, it is also clear that he did not waive his lien as to property abandoned by the estate or not administered by closing. "[Viewing] the facts and all reasonable inferences drawn therefrom in the light most favorable to *the nonmoving party,*" *Surety Underwriters,* 2000 UT 71 at ¶ 15, 10 P.3d 338, we determine that the property in question was not administered by closing. *See Collier on Bankruptcy,* 554.2[7] at 554–9 (Lawrence P. King. ed., 15th ed. 1996) ("When there is no court order directing abandonment, the language of [11 U.S.C. § 362(c) ] deems abandoned to the debtor *any* scheduled property of the estate that is unadministered at the close of the case."). Thus, the trial court erred in concluding that Sittner waived his lien.[5] Accordingly, we conclude that Sittner's lien as to the property was not waived, and the lien survived bankruptcy.

5. The Gildeas also assert that because Sittner marked his proof of claim as "unsecured," despite the fact that he was a lien creditor, his proof of claim form was "totally inaccurate and completely misleading," so he is now barred from recovering through his lien. However, the Gildeas provide no legal support for this proposi-

## Statute of Limitations

¶ 12 Appellees contend that Sittner is barred from enforcing his lien by the judgment's statute of limitations. We disagree. Utah Code Ann. § 78–22–1(1) (1996) provides: "Judgments shall continue for eight years unless previously satisfied or unless enforcement of the judgment is stayed in *accordance with law.*" *Id.* (emphasis added). The statute does not limit the law which can stay enforcement of a judgment to state law. Thus, the statute of limitations under section 78–22–1(1) tolls while the judgment is stayed in accordance with the Bankruptcy Code's automatic stay provisions. *See* 11 U.S.C. § 362(a) (1993).

¶ 13 Appellees nevertheless argue that the eight-year statute of limitations bars enforcement of Sittner's lien. They contend that the bankruptcy court's release of the automatic stay as to Hale released the subject property from the stay as to all parties with an interest in the property. The bankruptcy court's order provides:

> 1. The motion of the creditor Joy [Hale] for an Order vacating the automatic stay *as to herself* is granted.
> 2. *The creditor Joy [Hale] may immediately proceed* to foreclose its security interest pursuant to the laws of the State of Utah without further order of this court.
> 3. The property affected by this order is real property located at 2400 East 3000 South, Salt Lake City, Utah.

(Emphasis added.)

■ ¶ 14 The stay was vacated specifically as to Hale. Appellees fail to provide any legal support for the proposition that releasing a stay as to one creditor to foreclose on certain property necessarily releases that property from the stay as to *all* creditors. Thus, because the bankruptcy court's order vacated the stay "as to" Hale specifically, and only mentioned the property in question to clarify on which property Hale could foreclose, we

tion, and we therefore decline to address it. *See Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998) ("[The] brief contains little analysis on this point. There is no reference to legal authority in support of his contention.... Because of inadequate analysis, we decline to address [this] claim on appeal."); Utah R.App. P. 24(a)(9).

conclude that the automatic stay was not released by that order as to anyone but Hale. Since the property in question was not administered at the close of the bankruptcy case, the automatic stay continued until the close of the bankruptcy. *See* 11 U.S.C. § 362(c). The bankruptcy statute governing termination of an automatic stay provides:

(1) the stay *of an act against property of the estate* . . . continues until such property is no longer property of the estate; and

(2) the stay of any other act . . . continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) . . . the time a discharge is granted or denied.

11 U.S.C. § 362(c) (emphasis added).

The automatic termination of the stay as to the estate's interest in the property is governed by § 362(c)(1) while the termination of the stay as to the debtors' interest is controlled by § 362(c)(2). Since both interests are involved in this case, the stay against the property has not been terminated as a matter of law unless the plaintiff has met the requirements of both § 362(c)(1) and (2).

*In re Ripianzi*, 27 B.R. 15, 16 (Bankr. M.D.Pa.1982). *See also American Nat'l Bank & Trust Co. v. DeJournette*, 222 B.R. 86, 90 (W.D.Va.1998) ("Discharge alone is insufficient to terminate a stay when the creditor seeks relief against the estate's property. . . ."). Thus, the stay remained in effect as to Sittner's "act against property of the estate" and tolled the statute of limitations [6] until the close of Gildea's bankruptcy.

¶ 15 The statute of limitations likewise tolls from the time this appeal was filed. *See* 54 C.J.S. *Limitations of Actions* § 122 (1987) ("While a plaintiff's right of action is . . . suspended by an appeal from the judgment which fixes such right, thus depriving him of the means of enforcing his claim, pending such appeal, limitations will not run until the final disposition of the appeal."); *cf American Tierra Corp. v. City of West Jordan*, 840 P.2d 757, 762 (Utah 1992) ("We agree with the federal interpretations and conclude as a matter of Utah law that when a proper appeal of a class certification decision is taken, the tolling benefit continues on behalf of all members of the class until the class issue is finally determined by the decision on appeal."); *Free v. Farnworth*, 112 Utah 410, 188 P.2d 731, 735 (1948) (stating that where a judgment debtor wrongfully obtains an injunction against enforcement of a judgment lien, he is barred from asserting the statute of limitations as a defense).

¶ 16 After combining the tolling of the limitations period during the Gildeas' bankruptcy with the tolling effect of this appeal from an erroneous summary judgment, we conclude that the statute's eight-year limitation does not yet bar Sittner from enforcing his lien. Sittner goes further still, however, contending that the statute of limitations was tolled "through the periods that Sittner has been subject to adverse rulings." [7]

---

**6.** 11 U.S.C. § 108(c) (1993) provides that if a statute of limitations such as the one created in section 78–22–1 "has not expired before the date of the filing of the petition, then such period does not expire until the later of-(1) the end of such period, *including any suspension of such period occurring on or after the commencement of the case* . . ." 11 U.S.C. § 108(c) (1993) (emphasis added). "The reference in § 108(c)(1) to 'suspension' of time limits clearly does not operate in itself to stop the running of a statute of limitations; rather, this language merely incorporates suspensions of deadlines that are expressly provided in other federal or state statutes." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir.1993). So the bankruptcy stay does not necessarily toll all statutes of limitation.

Nevertheless,
Utah Code Ann. § 78–12–41 bears directly upon the issue presented, and its substance is wholly consistent with like provisions of the Bankruptcy Code. . . . [T]he statute provides, *"When the commencement of an action is stayed by injunction or statutory prohibition* the time of the continuance or prohibition is not part of the time limited for the commencement of the action." Thus, under both the Bankruptcy Code and our own statute
the automatic stay tolls the eight-year statute of limitations for the time it was in effect. *Citicorp Mortgage Inc. v. Hardy*, 834 P.2d 554, 556 (Utah 1992) (citation omitted) (emphasis added).

**7.** Because Sittner was not prevented from enforcing his lien, except when an adverse ruling or judgment precluded him from doing so, we do not consider any periods when the trial court merely stayed the declaratory judgment action and no adverse ruling or judgment was in place. Thus, other than during the Gildea's bankruptcy

¶ 17 Sittner relies on principles of equitable estoppel set forth in *Free*, though he mislabels them "equitable tolling," [8] to defeat the normally rigid eight-year statute of limitations.[9] In *Free*, the supreme court noted,

> There is ample authority to the effect that where a judgment debtor prevents levy of execution or sale under writ of execution, by injunction proceedings, on dismissal of the injunction proceedings the debtor is estopped to claim expiration of the judgment lien until the lapse of a period of time which would correspond with the time lost to the judgment creditor by an improperly issued or wrongfully maintained restraining order.

*Free*, 188 P.2d at 735. Moreover, the court in *Free* stated,

> The underlying theory upon which such rule is predicated is that when the judgment debtor goes into equity to prevent collection of the judgment, he impliedly consents that if the injunction has been improvidently granted or wrongfully maintained, his adversary shall not be placed at a disadvantage by reason of the delay.

*Id.* Schriever and Hale counter, citing *Federal Farm Mortgage Corp. v. Walker*, 115 Utah 461, 206 P.2d 146 (1949). The court in *Federal Farm* cited *Smith v. Schwartz*, 21 Utah 126, 60 P. 305 (1899) for the proposition that a "lien of a judgment expires at the end of the statutory period established by the legis-

lature and that the courts are powerless to extend it beyond that time." *Id.* at 147. The *Federal Farm* court distinguished that case from *Free*, however, explaining:

> The *Free* decision is grounded upon the equitable principle that no one should be allowed to profit from his own wrong. In the instant case levy of execution before the lien expired was not made impossible nor rendered fruitless by any wrongful or misleading act or conduct of the defendants. They have done nothing to invoke an estoppel against them.

*Id.* at 147–48. Accordingly, we find Appellees' attempt to avoid *Free* unpersuasive. As in *Free*, erroneous adverse judgments procured by the debtor prevented Sittner from enforcing his lien. We thus find *Free* more analogous to the present case, and we conclude that Appellees are estopped from asserting the statute of limitations as a defense during the three periods where an adverse ruling prevented Sittner from enforcing his lien. This "puts the parties in the same relative position in which they would have been placed if the appellants had not procured an erroneous judgment in the first instance." *Free*, 188 P.2d at 735.

### Fraudulent Transfer

¶ 18 Sittner also appeals from the trial court's grant of summary judgment dismissing his fraudulent conveyance claim,[10] an al-

and this appeal, we consider only three separate time periods for purposes of Sittner's equitable estoppel argument to be pertinent to Sittner's request for equitable estoppel tolling the statute: from entry of the trial court's first summary judgment adverse to Sittner in May of 1994 to the trial court's reconsideration of that judgment in September of 1995; from the adverse ruling of the bankruptcy court in June of 1995 to the U.S. District Court decision vacating that ruling; and from the adverse summary judgment granted by the trial court in March of 1997 to the final disposition of this appeal.

8. While the result of equitable tolling and equitable estoppel are the same when applied to statutes of limitation, the equitable tolling doctrine applies a balancing test to determine if " 'exceptional circumstances [exist] where the application of the [statute of limitations] would be "irrational" or "unjust." ' " *Estes v. Tibbs* 1999 UT 52, ¶ 5, 979 P.2d 823 (quoting *Sevy v. Security Title Co.*, 902 P.2d 629, 636 (Utah 1995)). Sitt-

ner does not argue exceptional circumstances, but instead asserts that Appellees' conduct in delaying enforcement of the lien estops them from asserting the statute of limitations as a defense, an assertion typical of equitable estoppel arguments.

9. "[W]e did depart from [strictly adhering to the eight-year statute of limitations] and extend the life of a judgment lien in [*Free* ]. Our reasons for so doing rested fundamentally upon the doctrine of estoppel." *Federal Farm Mortgage Corp. v. Walker*, 115 Utah 461, 206 P.2d 146, 147 (1949).

10. In response to Schriever and Hale, who raise the issue in their brief, Sittner requests for the first time in his reply brief that we reverse the trial court's summary dismissal of his fraudulent transfer claim. We address this argument, first mentioned by Sittner in his reply brief, because the issue was first raised in Schriever's and Hale's brief. *See Brown v. Glover*, 2000 UT 89, ¶ 7, 16 P.3d 540.

ternate theory asserted in support of a declaration that his lien is valid. Because we have already ruled on this underlying issue which addresses the only claim for relief being sought, we need not discuss the merits of the fraudulent transfer claim.[11]

### Attorney Fees

¶ 19 The trial court awarded attorney fees under Utah Code Ann. § 78–27–56 (1996 & Supp.2000), which directs the court to award attorney fees "if the court determines the action . . . was without merit and not brought or asserted in good faith. . . ." *Id.* "Because we reverse the trial court on [the grounds] on which it relied to dismiss [Sittner's] claim, we also reverse the court's grant of attorney fees." *Burns Chiropractic Clinic v. Allstate Ins. Co.*, 851 P.2d 1209, 1212 (Utah Ct.App. 1993).

### CONCLUSION

¶ 20 Sittner's lien survives Gildea's bankruptcy in rem. Thus, Sittner's claim has merit, and an attorney fees award under Utah Code Ann. § 78–27–56 (1996 & Supp. 2000) is inappropriate. Accordingly, we reverse the trial court's summary judgment and remand for the trial court to enter a declaratory judgment consistent with this opinion.

¶ 21 WE CONCUR: RUSSELL W. BENCH, Judge, JUDITH M. BILLINGS, Judge.

---

**11.** Sittner also argues that the trial court abused his discretion in not striking portions of Appellees' memoranda "that contained opinions of other judges, offered to support [Sittner's] third motion for summary judgment" and in considering those opinions in granting his third summary judgment. Our holding renders this issue moot.