2014 UT App 152

Lee JACKSON; Action Investment Services, LLC; and International Petroleum, LLC, Plaintiffs and Appellants,

v.

William C. HALLS, Corinne Halls, Trevor Halls, Countrywide Bank FSB, and Mortgage Electronic Registration Systems, Inc., Defendants and Appellees.

No. 20121081–CA.

Court of Appeals of Utah.

June 26, 2014.

James H. Deans, Timothy S. Deans, and Reid W. Lambert, for Appellants.[1]

Bryan H. Booth and John W. Mann, for Appellees.

1. James H. Deans and Timothy S. Deans were on the brief; Reid W. Lambert argued.

2. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

3. Jackson had recorded a notice of lis pendens to alert potential purchasers or lenders that title to the Davis County property was in question. But

Judge J. FREDERIC VOROS JR. authored this Memorandum Decision, in which Judge STEPHEN L. ROTH and Senior Judge RUSSELL W. BENCH concurred.[2]

Memorandum Decision

VOROS, Judge:

¶ 1 The central issue on appeal is whether, under our pre–2011 statutory scheme, a "renewed" judgment lien relates back in time to the date of the original judgment. Under controlling precedent, the district court ruled that it did not. We agree and affirm.

¶ 2 In December 1999, William and Corinne Halls held title to Lot 308, a piece of property in Davis County. Lee Jackson filed an action against William Halls in the Third District Court. The court entered judgment in Jackson's favor in 2001. Jackson then filed an abstract of the judgment in the Second District Court in Davis County and recorded a lien against Lot 308.

¶ 3 Jackson discovered that in February 2001—before the Third District Court had entered judgment against William Halls—William and Corinne had signed a quitclaim deed transferring Lot 308 to Corinne alone. Jackson filed an avoidance action seeking to void the quitclaim deed as a fraudulent transfer. The court eventually dismissed Jackson's avoidance action for failure to prosecute.

¶ 4 In 2007, Countrywide Bank loaned Corinne Halls $469,500. Unaware of Jackson's judgment, Countrywide secured the loan with a deed of trust against Lot 308.[3]

¶ 5 In 2008, Jackson took a series of steps to bolster his claim to a lien on Lot 308. First, he filed an action to renew his 2001 judgment. The district court entered a second judgment in November 2008. Jackson then moved to set aside the dismissal of his avoidance action.[4] The district court voided

Jackson mistakenly recorded the lis pendens against Lot 307, an adjacent lot, rather than Lot 308.

4. Jackson named Countrywide Home Loans as a defendant, but Countrywide Home Loans was never served with a summons and complaint. Countrywide Home Loans therefore never appeared in the avoidance action.

the 2001 quitclaim transfer and returned title in Lot 308 to both William and Corinne Halls. Finally, the district court issued a writ of execution, ordering the sale of Lot 308. At the sheriff's sale, Jackson purchased Lot 308 with a credit bid of $425,000.

¶ 6 Jackson then sought to evict the Hallses and to quiet title against Countrywide and other lenders. The lenders moved for summary judgment, arguing that Jackson's 2008 judgment did not relate back to the date of the original judgment and was thus subordinate to the Countrywide trust deed. The district court agreed and ruled the lenders' interest in Lot 308 superior to Jackson's. Jackson appeals.

¶ 7 Jackson contends that a renewal judgment lien relates back in priority to the original judgment lien. The district court rejected this contention and granted the lenders summary judgment. We review a district court's summary judgment for correctness, giving no deference to the district court's ruling. *Bahr v. Imus,* 2011 UT 19, ¶ 15, 250 P.3d 56.

¶ 8 "A judgment lien is purely a creation of statute." *Cox Corp. v. Vertin,* 754 P.2d 938, 939 (Utah 1988). Utah's judgment-lien law, once located in Utah Code section 78-22-1, now resides in Utah Code section 78B-5-202. Under that section, "the entry of judgment by a district court creates a lien upon the real property of the judgment debtor" subject to certain statutory exemptions. Utah Code Ann. § 78B-5-202(2) (LexisNexis 2008).

¶ 9 Judgments last for only "eight years from the date of entry ... unless previously satisfied or unless enforcement of the judgment is stayed in accordance with law." *Id.* § 78B-5-202(1). A judgment holder may, however, extend the life of a judgment through renewal. A judgment renewal "is not an attempt to enforce, collect, or expand the original judgment." *Barber v. Emporium P'ship,* 800 P.2d 795, 797 (Utah

1990). Rather, the judgment holder seeking renewal is "only trying to maintain the status quo by preventing the judgment's lapse under the statute of limitations." *Id.*

¶ 10 But in 2008, when Jackson renewed his judgment against William Halls, lien priority was not considered part of the status quo maintained by a judgment renewal. In *Cox Corp. v. Vertin,* our supreme court concluded that a renewal judgment does not extend an existing judgment lien but instead creates a new lien. 754 P.2d 938, 939 (Utah 1988). And that new lien "attaches only from the date of entry of the new judgment and does not relate back to the date of the original judgment or extend the prior lien." *Id. Cox* applied the 1987 version of the judgment-lien statute, which stated, "The lien shall continue for eight years unless the judgment is previously satisfied...." Utah Code Ann. § 78-22-1 (Michie 1987).

¶ 11 The 1987 version of the statute applicable in *Cox* and the 2008 version applicable here have the same effect. The 2008 version of the judgment-lien statute reads, in pertinent part, "Judgments shall continue for eight years from the date of entry in a court unless previously satisfied...." Utah Code Ann. § 78B-5-202 (LexisNexis 2008). The statute was amended several times between 1987 and 2008, but no pre-2008 amendment altered the *Cox* rule that a judgment lien expires in eight years. *See* Court Jurisdiction, ch. 127, § 15, 1992 Utah Laws 553, 557; Recording Judgments on Real Property, ch. 96, § 1, 1997 Utah Laws 348, 348; Judgment Lien Amendments, ch. 370, §§ 5-6, 2001 Utah Laws 1670, 1672.

¶ 12 Under relevant law, Jackson's judgment renewal created a new lien. That lien attached from the new judgment's date of entry—November 25, 2008. Countrywide recorded its trust deed in 2007. Countrywide's trust deed is therefore superior to Jackson's judgment lien. Accordingly, the district court correctly granted Countrywide summary judgment.[5]

---

5. The current version of this statute does allow for judgment-lien extensions. A 2011 amendment to the judgment-lien statute created section 78B-5-202(9), which establishes a procedure for judgment holders to "release, assign, renew, or

extend a lien created by a judgment." *See* County Recorder Amendments, ch. 88, § 11, 2011 Utah Laws 536, 543. But the enrolled version of the bill creating section 78B-5-202(9) states that the amendment *"modifies* provisions related to

¶ 13 Jackson also contends that even if a judgment renewal does not enjoy the same priority as the original judgment, the Hallses' fraud tolled the running of the eight-year life of the original judgment lien. That tolling, Jackson argues, extended the life of the initial lien and preserved its priority. Again, we review the summary judgment on this issue for correctness, giving no deference to the district court's ruling. *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56.

¶ 14 Jackson bases his equitable-tolling argument on *Free v. Farnworth*, a 1948 Utah Supreme Court case. 112 Utah 410, 188 P.2d 731 (1948). In *Free*, a debtor obtained an injunction preventing a judgment creditor from executing on his judgment during its eight-year life. *Id.* at 735. Our supreme court held that under equitable principles the debtor's interference tolled the running of the judgment lien:

> "If the judgment debtor procures the injunction, and thereby prevents the enforcement of the judgment, he is, upon equitable principles, not permitted to take advantage of his own wrong, and will not be heard to urge that the lien has been lost by the delay compelled by his writ."

*Id.* (quoting 2 *Freeman on Judgments* § 1014, at 2113 (5th ed. 1925)). The *Free* court based its decision on equitable principles. As this court explained in *Sittner v. Schriever*, "The *Free* decision is grounded upon the equitable principle that no one should be allowed to profit from his own wrong." 2001 UT App 99, ¶ 17, 22 P.3d 784.

¶ 15 Here, however, the lenders claiming priority for their judgment did not prevent Jackson's enforcement of his judgment. *See Free*, 188 P.2d at 735. The lenders thus do not seek to profit from their own wrong. *See Sittner*, 2001 UT App 99, ¶ 17, 22 P.3d 784. In fact, Jackson's failure to execute on Lot 308 appears to be due to his own delay: the record indicates that Jackson was aware of the Hallses' quitclaim transfer in October 2003, more than six years before his judgment expired. The principle of equitable tolling therefore does not apply to the lenders' request for summary judgment. The district court thus did not err on this point.

¶ 16 The district court's grant of summary judgment is accordingly affirmed.

the recording of a release, assignment, renewal, or extension of a judgment lien." *Id.* at 536 (emphasis added). The parties agree that this later version of the statute does not apply to the present dispute.

Jackson argued for the first time at oral argument that a 1997 amendment to Utah's judgment-lien statute overruled *Cox*. *See* Recording Judgments on Real Property, ch. 96, § 1, 1997 Utah Laws 348, 348. However, we will not reverse a district court's decision based on an argument raised for the first time at oral argument. *See Washington v. Kraft*, 2010 UT App 266U, paras. 11–13, 2010 WL 3794464. In any event, the 1997 amendment does not purport to alter the law related to the priority of renewed judgment liens. Given the clarity of the *Cox* rule, we are disinclined to conclude that our legislature intended to overrule it by implication. *Cox* therefore governs Jackson's 2008 renewal. *See Cox Corp. v. Vertin*, 754 P.2d 938, 939 (Utah 1988).