2016 UT App 36

# THE UTAH COURT OF APPEALS

ROGER P. CHRISTENSEN IRA AND
ROGER P. CHRISTENSEN,
Appellants,
*v.*
AMERICAN HERITAGE TITLE AGENCY, INC., ET AL.,[1]
Appellees.

Opinion
No. 20140714-CA
Filed February 19, 2016

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 110905163

Roger P. Christensen, Paul A. Christensen, and Karra
J. Porter, Attorneys for Appellants

Bryan H. Booth and John W. Mann, Attorneys for
Appellees Fifth Third Mortgage Company,
Nationstar Mortgage, LLC, and Bank of New
York Mellon

Anthony W. Schofield, Peter C. Schofield, Adam D.
Wahlquist, and Alexander Dushku, Attorneys for
Appellees First American Title Company, First
American Title Insurance Agency LLC, Claude
Lewis, Marlene Millett, Marlies Kramer, Gary
Sturdevant, Fabio Cavalcante, and Jessica Cavalcante

Jeffrey L. Silvestrini and Jonathan D. Bletzacker,
Attorneys for Appellees American Heritage Title

---

1. The parties on appeal are not limited to those listed and include other parties whose names appear on the notice of appeal or who have otherwise entered appearances in this court.

Agency, Inc., Heritage Companies Inc., and Mercury Settlement Services of Utah

Jeffrey J. Steele, Attorney for Appellee Rick Smith

W. Jeffery Fillmore and Marc L. Turman, Attorneys for Appellee Founders Title Company

Ronald G. Russell and Rodger M. Burge, Attorneys for Appellee Quicken Loans, Inc.

---

JUDGE KATE A. TOOMEY authored this Opinion, in which JUSTICE JOHN A. PEARCE and SENIOR JUDGE RUSSELL W. BENCH concurred.[2]

---

TOOMEY, Judge:

¶1 The Roger P. Christensen IRA and Roger P. Christensen (collectively, Plaintiff) appeal from the district court's dismissal of their foreclosure claims related to three properties. We affirm.

BACKGROUND[3]

¶2 In 2005, Plaintiff made several loans to Bradley Lancaster and Lancaster's company BRL Properties, LLC (BRL) for the

---

2. Justice John A. Pearce began his work on this case as a member of the Utah Court of Appeals. He became a member of the Utah Supreme Court thereafter and completed his work on this case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(3). Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally id.* R. 11-201(6).

3. Because we are reviewing the grant of a motion to dismiss, we recite the background facts as alleged in Plaintiff's complaint. *See Siebach v. Brigham Young Univ.*, 2015 UT App 253, ¶ 2 n.1, 361 P.3d 130.

purpose of investing in real estate. Each loan was secured by a trust deed on a property and provided that Lancaster would repay the loan with interest when the property was sold, approximately six months later. Sometime in 2009, Plaintiff discovered that Lancaster misappropriated and converted the loaned funds.

¶3    Rick Smith acted as the escrow agent and the title insurance agent for all of the transactions, and he was responsible for disbursing the proceeds of the loans and for recording the related trust deeds. At the time, Smith was an agent of several companies, including Mercury Settlement Services of Utah; Heritage Companies, Inc.; American Heritage Title Agency, Inc.; First American Title Insurance Agency, LLC and/or First American Title Company.[4]

¶4    Three transactions are relevant to this appeal. The first involved a property on Annapolis Drive. On April 8, 2005, Lancaster signed a promissory note for $119,340 in favor of Plaintiff. The note provided that the entire principal and interest was due by October 8, 2005. As security for payment of the note, Lancaster executed a trust deed for the Annapolis Drive property. Lancaster defaulted on the note by failing to repay the loan. On August 26, 2005, BRL transferred the Annapolis Drive property via warranty deed to Claude Lewis. Lewis later executed a trust deed on the property in favor of Fifth Third Mortgage Company with Genuine Title, LLC as trustee.[5]

¶5    The second loan involved a property on Bury Road. On August 30, 2005, Lancaster signed a promissory note for $83,650

---

4. The complaint also alleged that Smith was an agent of Highland Title Company, but Highland Title was dismissed as a party by stipulation and without prejudice in the district court.

5. Plaintiff also alleges that Freedom Mortgage Corporation may claim an interest in the Annapolis Drive property based on a 1993 trust deed.

on behalf of BRL in favor of Plaintiff. The note provided that it would be due on November 30, 2005. Lancaster executed a trust deed on the Bury Road property as security. Lancaster and BRL again defaulted. BRL executed another trust deed on the Bury Road property in favor of Rick Lamont and Sunday Larson, with First American Title Insurance Agency, LLC as trustee, in late November 2005. And in February 2007, BRL transferred the Bury Road property to Fabio and Jessica Cavalcante. Sometime later, Mortgage Electronic Registration Services, Inc. (MERS), with Founders Title Company as trustee, claimed an interest in the Bury Road property based on trust deeds signed in 2007 and 2011.

¶6     The third loan involved a property on Jordan Point Drive. On October 27, 2005, Lancaster and BRL signed a promissory note for $43,000 in favor of Plaintiff. The note was due by April 27, 2006, and it was secured by a trust deed on the Jordan Point Drive property. Lancaster and BRL similarly defaulted on this note. In April 2008, BRL transferred the Jordan Point Drive property via warranty deed to Gary Sturdevant who then later sold the property to Marlene Millett and Marlies Kramer on October 1, 2013.

¶7     On March 2, 2011, Plaintiff filed suit against Lancaster, Smith, Mercury Settlement Services, Heritage Companies, and American Heritage Title Agency. Plaintiff's complaint raised claims against Lancaster for accounting and conversion. Its claims against the other defendants included breach of fiduciary duties, negligence, and successor liability. Plaintiff's complaint sought a return of the lost funds, an accounting, and attorney fees. It also sought joint and several liability with regard to Lancaster and Smith. But, the complaint did not specifically reference the promissory notes related to the Annapolis Drive, Bury Road, or Jordan Point Drive properties, nor did it mention foreclosure on those properties.

¶8     Two years later, during the course of discovery, Plaintiff amended its complaint. Filed on October 4, 2013, the amended complaint raised—for the first time—claims seeking foreclosure

on the Annapolis Drive, Bury Road, and Jordan Point Drive properties. It also added as foreclosure defendants those parties alleged to have inferior interests in the properties securing the promissory notes signed by Lancaster. These foreclosure defendants included Lewis, Fifth Third Mortgage Company (Genuine Title, LLC, Trustee), Freedom Mortgage Corporation, the Cavalcantes, Lamont, Larson, MERS (Founders Title Company, Trustee), Sturdevant, and Countrywide Funding Corporation (Guardian Title Company of Utah, Trustee). Plaintiff subsequently filed another amended complaint in March 2014, adding Millett and Kramer as foreclosure defendants as well.

¶9     Millett, Kramer, Sturdevant, the Cavalcantes, and Founders Title moved to dismiss the foreclosure claims on the Bury Road and Jordan Point Drive properties. They argued that the applicable six-year statute of limitations barred the foreclosure claims against them. In their view, Lancaster's failure to pay by the due dates on the promissory notes constituted a default that triggered the statute of limitations. They further argued that the most recent date of default under the relevant promissory notes was April 27, 2006, and therefore Plaintiff was required to initiate foreclosure within six years of that date, by April 26, 2012. Because Plaintiff did not raise the foreclosure claims until October 4, 2013, almost eighteen months after the expiration of the six-year period, they argued the foreclosure of the Bury Road and Jordan Point Drive trust deeds was barred. Sturdevant argued that he should be dismissed because the complaint alleged he did not have an ownership interest in the property because he conveyed his interest in the Jordan Point Drive property to Millett and Kramer.

¶10     In opposing the motion, Plaintiff asserted that its foreclosure claims were timely because it commenced this action against Lancaster before the expiration of the six-year statute of limitations. Plaintiff further asserted that any amendments to the complaint related back to the date of the original complaint pursuant to rule 15(c) of the Utah Rules of Civil Procedure. Alternatively, Plaintiff argued that estoppel and equitable tolling

prevented the application of the statute of limitations to this case.

¶11    The moving parties responded that relation back under rule 15(c) does not apply to new parties added to an amended complaint. They further asserted that they did not fall within the identity-of-interest or misnomer exceptions to the relation-back doctrine. Moreover, the moving parties argued that equitable principles did not apply, because they did not mislead or conceal any information from Plaintiff and had no role in the fraud Plaintiff alleged against the original defendants.

¶12    The district court ultimately dismissed the foreclosure claims on the Bury Road and Jordan Point Drive properties with regard to Millett, Kramer, Sturdevant, the Cavalcantes, and Founders Title Company. In its memorandum decision, the court first dismissed Sturdevant from the suit because he had no interest in the subject properties.[6] The court then explained that if the foreclosure action relating to the Bury Road and Jordan Point Drive properties had been included in the original complaint on March 2, 2011, "it would have been timely" because the complaint is "within the six year statute of limitation of November 29, 2011 for the Bury Road Property" and "within the six year statute of limitation of April 26, 2012 for the Jordan Point Property." But because "it was not until October 4th, 2013 when the [amended complaints] brought foreclosure actions for the first time and added new parties to the suit," the court concluded that Plaintiff brought the foreclosure actions "after the expiration of the statute of limitations on both properties."

¶13    The district court further concluded that the amended complaints did not relate back to the date of the original complaint, reasoning that relation back does not apply where, as here, new parties are added to the suit in an amended complaint. The court determined that the exceptions to this rule were not

---

6. Plaintiff does not challenge this conclusion on appeal.

applicable. Additionally, it rejected Plaintiff's claim that the statute of limitations was subject to estoppel or equitable tolling because "[t]here are no claims these defendants were fraudulent or any action by them was misleading toward Plaintiff[]." As the court explained, Plaintiff "knew in 2006 [it] had not been paid under the promissory notes . . . and [that] the maker of the notes was in default." The court further stated that Plaintiff failed to provide an explanation "as to why [it] could not have brought foreclosure action within the six years after the nonpayment on the notes."

¶14   The remaining foreclosure defendants moved for judgment on the pleadings, arguing that the foreclosure claim related to the Annapolis Drive property should be dismissed for the same reasons that the district court dismissed the claims related to the Bury Road and Jordan Point Drive properties. They also argued that the claims against the remaining foreclosure defendants with interests in the Bury Road property, like the Cavalcantes, should be dismissed. Eventually, Plaintiff, while reserving its objections to the motions, stipulated that, based on the district court's memorandum decision, the court should grant the motions for judgment on the pleadings. The parties also stipulated to the certification of the district court's orders as final.

¶15   The district court entered judgment in accordance with these stipulations. Although Plaintiff's non-foreclosure claims remained against the original defendants, the district court certified its dismissal orders as final judgments pursuant to rule 54(b) of the Utah Rules of Civil Procedure. Plaintiff now appeals.

ISSUES AND STANDARD OF REVIEW

¶16   Plaintiff contends the district court erred in granting the motion to dismiss for two reasons. First, Plaintiff argues the district court erred in determining that Plaintiff's claims did not relate back pursuant to rule 15(c) of the Utah Rules of Civil Procedure. Second, Plaintiff contends the district court

improperly refused to apply equitable principles to toll or estop the statute of limitations.

¶17    "A district court should grant a motion to dismiss only when, assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief." *Brown v. Division of Water Rights of Dep't of Nat. Res.*, 2010 UT 14, ¶ 10, 228 P.3d 747. We review the district court's grant of a motion to dismiss pursuant to rule 12(b)(6) for correctness. *Lilley v. JP Morgan Chase*, 2013 UT App 285, ¶ 4, 317 P.3d 470.


ANALYSIS

I. Relation Back

¶18    The parties do not dispute that the amended complaints, raising the foreclosure claims and adding the foreclosure defendants to the suit, were filed after the expiration of the six-year statute of limitations. But the parties disagree about whether Plaintiff's foreclosure claims against the foreclosure defendants relate back to the date of the original complaint such that its claims are not barred by the statute of limitations.

¶19    Rule 15(c) of the Utah Rules of Civil Procedure governs the relation back of amendments to pleadings. The rule states, "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Utah R. Civ. P. 15(c). The purpose of the rule is to "'allow[] a plaintiff to cure defects in [its] original complaint despite the intervening running of the statute of limitations.'" *Penrose v. Ross*, 2003 UT App 157, ¶ 9, 71 P.3d 631 (quoting *Russell v. Standard Corp.*, 898 P.2d 263, 265 (Utah 1995)). Rule 15(c) nevertheless "'will not apply to an amendment which substitutes or adds new parties for those brought before the court by the

original pleadings.'" *Id.* (quoting *Doxey-Layton Co. v. Clark*, 548 P.2d 902, 906 (Utah 1976)). This is because adding new parties "amount[s] to the assertion of a new cause of action, and if such were allowed to relate back to the filing of the complaint, the purpose of the statute of limitation would be defeated." *Doxey-Layton*, 548 P.2d at 906.

¶20    The amended complaints indisputably brought the foreclosure defendants into the action as newly named parties. To allow the relation back of the claims as against the foreclosure defendants, generally a plaintiff is required to show that the case fits within one of two exceptions that allow for the relation back of amendments to complaints incorporating newly named parties—the misnomer exception or the identity-of-interest exception. *See Sweat v. Boeder*, 2013 UT App 206, ¶¶ 6, 8, 309 P.3d 295; *Penrose*, 2003 UT App 157, ¶ 9. But Plaintiff makes no argument that either exception should apply here.

¶21    Instead, Plaintiff seeks to circumvent the newly-added-party rule by arguing that its suit should be considered timely because the original complaint was filed against Lancaster within the statute of limitations. In support of this contention, Plaintiff relies on this court's decision in *DiMeo v. Nupetco Associates, LLC*, 2013 UT App 188, 309 P.3d 251, *petition for cert. filed*, Dec. 15, 2015 (U.S. No. 15-7598). In that case, Vern, Eleanor, and Michael Strand were obligors on a promissory note signed in 1982 and held by Nupetco. *Id.* ¶¶ 2–3. The note was secured by a trust deed that granted a security interest in real property owned by Vern and Eleanor. *Id.* ¶ 2. Vern and Eleanor passed away in 1987, without having made payments on the note. *Id.* ¶ 3. After their deaths, Michael made occasional payments on the note from around 1990 to 2005. *Id.* In 2006, the personal representative for Eleanor's estate filed suit to quiet title in the property securing the note. *Id.* ¶ 4. The personal representative argued that because the statute of limitations barred foreclosure, the trust deed could not be enforced. *Id.* The district court agreed, ruling that "Vern, Eleanor, and their estates were no longer personally liable on the note because the statute of limitations had run as to their obligation no later than 1998." *Id.*

Afterward, Nupetco filed an answer and a counterclaim, seeking to foreclose the trust deed and seeking judgment on the note against Michael, but the district court dismissed this pleading on the ground that Michael's obligation was irrelevant. *Id.* ¶¶ 5, 10.

¶22 On appeal, this court agreed with the district court that "Nupetco's ability to obtain a deficiency judgment against Vern, Eleanor, or their estates has long since expired due to their longstanding failure to make any payments due under the note." *Id.* ¶ 8. Nevertheless, we reversed the district court and concluded that the trust deed was still enforceable as security for the note. *Id.* ¶¶ 7, 9. We explained that "the running of the statute of limitations only prevents Nupetco from imposing liability on Vern and Eleanor personally for amounts still due after the security is sold and the proceeds applied to the debt." *Id.* ¶ 9. We also reversed the dismissal of Nupetco's counterclaim, explaining that because the trust deed could still be foreclosed, Nupetco should have been allowed to raise its counterclaim against Michael for liability and the foreclosure of the trust deed. *Id.* ¶ 10.

¶23 The parties here offer competing interpretations of *DiMeo*. According to Plaintiff, *DiMeo* stands for the proposition that "so long as the [statute of limitations] has not run against at least one obligor to the obligation secured by the Trust Deed, foreclosure is proper." Thus, Plantiff argues, foreclosure here was timely and proper under *DiMeo* because Plaintiff filed the original complaint against Lancaster, an obligor on the notes secured by the trust deeds, before the statute of limitations expired. By contrast, the foreclosure defendants assert that *DiMeo* indicates only that "just because some obligors on the promissory note cannot be held personally liable, that does not excuse the obligation of other obligors under the note." The foreclosure defendants thus assert that *DiMeo* has no application to this case because it can be distinguished.

¶24 We agree with the foreclosure defendants that *DiMeo* is distinguishable in important ways. First, the issue addressed in *DiMeo* was fundamentally different: *DiMeo* analyzed whether

the expiration of the statute of limitations against two deceased obligors on the note prevented the trust deed from validly securing the obligation due under the note. *Id.* ¶¶ 6–9. Whether a newly added party to an amended complaint could assert a statute of limitations defense was simply not before the court. Second, the six-year statute of limitations had not yet run as against Michael Strand. *See id.* ¶¶ 3, 5. When Nupetco sought judgment on the note and foreclosure against Michael Strand in 2009, its foreclosure action was timely because Michael Strand continued making payments until about 2005. *Id.* Here, unlike *DiMeo*, the six-year statute of limitations had expired by the time Plaintiff asserted the foreclosure claims. Although Plaintiff relies on *DiMeo* for the contention that its foreclosure claims were timely, Plaintiff overlooks the fact that it failed to raise foreclosure claims against Lancaster *and* the foreclosure defendants until after the statute of limitations had expired. Third, this court's reinstatement of Nupetco's foreclosure counterclaim was based on the conclusion that the trust deed was still enforceable and that Michael's liability and foreclosure of the trust deed were relevant to the proceedings. *Id.* ¶ 10. *DiMeo* therefore offers no analysis of relation back under rule 15(c). Because of these differences, *DiMeo* sheds little light on the present case, and Plaintiff's reliance on *DiMeo* is misplaced.

¶25   Plaintiff nevertheless contends that its foreclosure claims should relate back at least as to Lancaster, that Lancaster lacked a statute of limitations defense, and that Plaintiff's foreclosure claims against the foreclosure defendants should also be allowed to proceed. But aside from *DiMeo*, Plaintiff provides no support for these contentions. *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885 (indicating that an appellant does not meet its burden to demonstrate district court error when it fails to present relevant authority and "reasoned analysis based on that authority" (citation and internal quotation marks omitted)). As a result, we are not persuaded that this case presents reason to depart from well-established law regarding the relation back of amendments to pleadings that bring new parties into a lawsuit. We therefore affirm the district court's

conclusion that Plaintiff's foreclosure claims against the foreclosure defendants do not relate back under rule 15(c).

## II. Equitable Tolling and Estoppel

¶26 Plaintiff alternatively contends the district court erred by refusing to equitably toll or estop the application of the statute of limitations to its foreclosure claims. Plaintiff argues that the facts alleged in the complaint support a determination of exceptional circumstances such that applying the statute of limitations would be irrational or unjust. Plaintiff also argues that the allegations support estopping the foreclosure defendants from asserting the statute of limitations due to Lancaster's concealment and misleading conduct.

¶27 "While the result of equitable tolling and equitable estoppel are the same when applied to statutes of limitation, the equitable tolling doctrine applies a balancing test to determine if exceptional circumstances [exist] where the application of the [statute of limitations] would be irrational or unjust." *Sittner v. Schriever*, 2001 UT App 99, ¶ 17 n.8, 22 P.3d 784 (alterations in original) (citation and internal quotation marks omitted). As the Utah Supreme Court has cautioned, "[t]he doctrine of equitable tolling should not be used simply to rescue litigants who have inexcusably and unreasonably slept on their rights, but rather to prevent the expiration of claims to litigants who, *through no fault of their own*, have been unable to assert their rights within the limitations period." *Garza v. Burnett*, 2013 UT 66, ¶ 11, 321 P.3d 1104 (alteration and emphasis in original) (citation and internal quotation marks omitted).

¶28 Here, estoppel may apply if Plaintiff's assertion of a claim before the expiration of the statute of limitations was made impossible or rendered fruitless by the "'wrongful and misleading act or conduct of the defendants.'" *See Sittner*, 2001 UT App 99, ¶ 17 (quoting *Federal Farm Mortg. Corp. v. Walker*, 206 P.2d 146, 147–48 (Utah 1949)).

¶29    Plaintiff asserts that equitable tolling of the statute of limitations is required here because "it was not until formal discovery in this case that [Plaintiff] discovered that although said properties had been sold through formal escrow, the outstanding trust deed notes had not been paid and the trust deeds had not been released." But we agree with the district court that Plaintiff's allegations showed Lancaster had been in default since 2006 and Plaintiff had not been paid any amounts owed under the promissory notes it possessed. Given that Plaintiff could have examined its own records to discover whether the notes had been paid, we further agree with the district court that Plaintiff provided no explanation "why [it] could not have brought foreclosure action within the six years after the nonpayment on the notes." Consequently, we cannot agree with Plaintiff that the application of the statute of limitations in this case would be irrational or unjust.

¶30    Regarding estoppel, Plaintiff contends that because of Lancaster's concealment and misleading conduct, the foreclosure defendants should not be allowed to raise the statute of limitations as a defense to Plaintiff's foreclosure claims. Specifically, Plaintiff argues that it "did not become aware of [its] foreclosure rights due to the fraud and concealment of Lancaster and First American" until after the running of the statute of limitations. But Plaintiff does not provide any authority for its assertion that the "applicability of equitable [tolling] turns on the behavior of Lancaster (and perhaps his co-conspirator First American), rather than the behavior" of the foreclosure defendants. Furthermore, we agree with the district court that "[t]here are no claims [the foreclosure] defendants were fraudulent or any action by them was misleading toward [Plaintiff]." Indeed, the complaint contains no allegations that the foreclosure defendants were involved in fraudulent conduct or committed any wrongdoing. And as Plaintiff acknowledges, the foreclosure defendants "were only named in the foreclosure action for title clearing purposes." Under these circumstances, and assuming the allegations of the complaint as true, Plaintiff's allegations do not show the "wrongful and misleading act or

conduct of the defendants" prevented it from bringing its foreclosure claims until 2013. *See Sittner*, 2001 UT App 99, ¶ 17 (citation and internal quotation marks omitted). Accordingly, the district court did not err in concluding that estoppel did not apply to this case.

## CONCLUSION

¶31 Plaintiff has not demonstrated that the district court erred in concluding that relation back and equitable principles do not apply to defeat the statute of limitations. Accordingly, we affirm the court's dismissal of Plaintiff's foreclosure claims against the foreclosure defendants.[7]

_____

7. In affirming the district court, we recognize that Plaintiff is not without a remedy; it still has claims pending against the original defendants and may yet obtain relief on those claims provided it carries its burden of proof.